19438

CHEMICAL LEAMAN TANK LINES, INC., Appellant, v. The SOUTH CAROLINA PUBLIC SERVICE COMMISSION, Respondent

(189 S. E. (2d) 296)

*Messrs. Thomas M. Boulware* and *R. M. Jefferies, Jr.,* *of Brown, Jefferies & Boulware,* of Barnwell, *for Appellant,*

· *Messrs. Daniel R. McLeod, Atty. Gen.,* and *William F. Austin, Asst. Atty. Gen.,* of Columbia, *for Respondent,*

June 7, 1972.

LEWIS, Justice.

This is an appeal from an order of the Court of Common Pleas of Richland County refusing to vacate or set aside orders of the South Carolina Public Service Commission granting an amended class "E" Certificate of Public Convenience and Necessity to Infinger Transportation Company, Inc.

Infinger's class "E" certificate had previously authorized motor freight service over irregular routes as follows:

"*Liquid chemicals in tank vehicles:* From points and places in Charleston County to points and places in South Carolina, for Koppers Company, Inc.; and, from points and places in Charleston and Berkeley Counties to points and places in South Carolina, and from Hampton and York Counties to points and places in Charleston and Berkeley Counties and between York County and points and places in South Carolina, for Burris Chemical Company.

*"Sulphate black liquor skimmings in tank vehicles:* From points in Florence County, S. C., to points in Charleston County, S. C."

On March 23, 1970, Infinger filed an application with the Commission to amend this certificate to read as follows:

*"Liquid chemicals in tank vehicles:* From points and places in Charleston, Berkeley, and York Counties to points and places in South Carolina, and from Hampton County to points and places in Charleston and Berkeley Counties.

*"Sulphate black liquor skimmings in tank vehicles:* From points in Florence County to points and places in Charleston County, S. C."

At a hearing held by the Commission, Chemical Leaman Tank Lines, Inc. and Schwerman Trucking Company appeared to protest the application. By order dated May 19, 1970, the Commission granted the application "in order to better serve the requirements of public conveniences and necessity." Thereafter, the protestants petitioned for and were granted a hearing. A subsequent order of the Commission affirmed its earlier order, with the Commission concluding that Infinger's additional service "will not seriously affect protestants' operations in this state and will allow applicant the opportunity to serve the public."

Chemical Leaman commenced this action for a review of the Commission's orders. From an order of the lower court dismissing the complaint, Chemical Leaman appeals.

At the outset, we reiterate the scope of this Court's review of orders of the Public Service Commission:

"In our consideration of the issues here presented the governing principle, well settled by many decisions of this Court, is that orders of the Public Service Commission issued under the powers and authority vested in it have the force and effect of law; that the Commission's findings of fact are presumptively correct and its orders presumptively reasonable and valid; that this Court cannot substitute its judgment for that of the Commission upon a question as to

which there is room for a difference of intelligent opinion; and that, therefore, an order of the Commission such as is here involved will not be set aside except upon a convincing showing that it is without evidence to support it or that it embodies arbitrary or capricious action as a matter of law." *Petroleum Transportation, Inc. v. Public Service Commission,* 255 S. C. 419, 179 S. E. (2d) 326 (1971), quoting *Long Motor Lines v. S. C. P. S. C.,* 233 S. C. 67, 103 S. E. (2d) 762 (1958), *Pee Dee Elec. Co-op. v. Public Service Commission,* 229 S. C. 155, 92 S. E. (2d) 171 (1956), and other authority.

The question for determination, then, is whether the order of the Commission was arbitrary, capricious, or without evidentiary support.

In support of its application, Infinger presented the testimony of Mr. Richard R. Infinger, its president and general manager; Mr. Harry Sikes, regional traffic manager for W. R. Grace & Company; and Mr. John J. Noone, manager of domestic traffic for Celanese Corporation.

Mr. Infinger testified that his company had been approached over the past several years by people who had products to be transported, but that his company was unable to handle their products due to the limited authority in their certificate. He also testified that salesmen from W. R. Grace & Company and Celanese Corporation had asked that he file the application. He further stated that his company had sufficient equipment and was financially capable of rendering additional service.

Mr. Sikes testified that W. R. Grace & Company anticipated shipping an additional ten thousand tons of liquid chemicals from its Charleston plant during the coming year. He also testified that one of Grace's customers in the Charleston area would very shortly require a large inventory of sulfuric acid. He "had reservations" about whether the carrier that they were then using would be able to supply their increased need for transportation, and for this rea-

son was supporting Infinger's application. According to Sikes, this would be new business, and would not involve taking existing business away from the carriers they were presently using.

The testimony of Mr. Noone was that the production of Celanese Corporation at its Cel River facility in York County would hopefully sustain an annual growth of ten to fifteen percent. To his knowledge only one carrier was authorized to haul liquid chemicals intrastate out of York County. Noone stated that Celanese felt that the existence of another authorized carrier was desirable in order to provide flexibility in meeting emergency shipments and in dealing with unusual situations that might arise.

The foregoing testimony is at best speculative. Celanese based its desire for additional transportation service upon testimony that production at its plant in York County would *hopefully* sustain an annual growth of ten to fifteen percent, and Grace upon an *anticipated* contract with an additional customer in Charleston to supply it with liquid chemicals.

In addition, these witnesses for Celanese and Grace admit that existing carriers have adequately and satisfactorily met their needs; and it is an undisputed fact that existing carriers are willing and financially able to fill the predicted transportation needs of the public involved. In fact, there is testimony that available equipment of existing carriers has not been utilized to its full extent. These facts alone are sufficient to defeat the present application. 13 Am. Jur. (2d), Carriers, Section 83.

All that the present record shows is that Infinger desires a certificate to serve customers now adequately served by existing carriers and that two of these customers would like to have Infinger do so. This is not a showing of public convenience and necessity.

Since the action of the commission in granting Infinger's application for a certificate of public convenience and necessity is totally without evidentiary support, the judgment of

the lower court is reversed and the order of the commission is set aside.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.