23647

SOUTH CAROLINA CABLE TELEVISION ASSOCIATION, Appellant v.
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY,
Steven W. Hamm as Consumer Advocate of South Carolina, MCI, and
The Public Service Commission of South Carolina, Respondents.

(417 S.E. (2d) 586)

Supreme Court

*Mitchell Willoughby, John M.S. Hoefer,* and *B. Craig Collins,* all of *Law Offices of Mitchell Willoughby,* Columbia, *for appellant.*

*Fred A. Walters,* of *Southern Bell Tel. and Tel. Co.,* and *A. Camden Lewis,* of *Lewis, Babcock & Hawkins,* Columbia, *for respondent Southern Bell Tel. and Tel. Co.*

*Marsha A. Ward, Gen. Counsel,* Columbia, *for respondent South Carolina Public Service Com'n.*

*Steven W. Hamm, Raymon E. Lark, Jr.,* and *Nancy J. Vaughn,* Columbia, *for respondent Consumer Advocate.*

Heard March 23, 1992.

Decided April 27, 1992.

HARWELL, Chief Justice:

Respondent Public Service Commission (the PSC) approved the application of respondent Southern Bell Telephone and Telegraph Company (Southern Bell) for revised depreciation rates and amortization schedules. Appellant South Carolina Cable Television Association (SCCTA) alleges that the trial judge erred in upholding the PSC's rulings and denying SCCTA's petition for judicial review. We affirm.

## I. FACTS

The controversy before us arises out of Southern Bell's proposed adjustments for depreciating its aerial, underground, and buried metallic cable plant. Southern Bell asserts that technological advancements soon will make fiber optic cable more economical to use than the metallic cable currently in place.

SCCTA alleges that Southern Bell intends to retire metallic cable and replace it with fiber optics in order to position itself to offer video and broadband services to the public.[1] SCCTA moved the PSC to dismiss Southern Bell's application for depreciation rate adjustments, or, in the alternative, to hold the application hearing in abeyance pending institution of a separate proceeding to determine whether Southern Bell was earning in excess of its authorized rate of return. The PSC denied the motion, finding that it would be premature to consider the impact of any adjustments to depreciation rates on Southern Bell's earnings. The PSC subsequently approved Southern Bell's application for new depreciation rates and amortization schedules. The revised rates and schedules resulted in an increased intrastate depreciation expense of $14.8 million based on a January 1, 1989 investment base.

SCCTA's petition for reconsideration of the order approving the new depreciation rates was denied by the PSC. SCCTA thereafter sought judicial review of the PSC's rulings. The trial judge found that the PSC had acted within its statutory authority, had ruled within its discretion, and had based its findings upon substantial evidence in the record. Ac-

---

[1] Southern Bell currently is precluded by the Cable Communications Policy Act of 1984 from offering video programming to subscribers within its service area. 47 U.S.C. § 533(b)(1991).

cordingly, the trial judge denied SCCTA's petition for judicial review.

## II. DISCUSSION

Orders issued under the powers and authority vested in the PSC have the force and effect of law. *Chemical Leaman Tank Lines, Inc. v. South Carolina Public Service Commission*, 258 S.C. 518, 189 S.E. (2d) 296 (1972). The PSC's findings of fact are presumptively correct and its orders are presumptively valid. *Id.* This Court will not substitute its judgment for that of the PSC upon a question as to which there is room for a difference of opinion. *Id.* We will not set an order of the PSC aside unless it is found by a convincing showing to be unsupported by evidence or to embody arbitrary or capricious action as a matter of law. *Greyhound Lines v. South Carolina Public Service Commission*, 274 S.C. 161, 262 S.E. (2d) 18 (1980).

### A.

SCCTA first asserts that the PSC erred in refusing to reconsider its original order approving Southern Bell's application for revised depreciation rates. We disagree. SCCTA complains that Southern Bell failed to produce a memorandum prepared by Southern Bell's sole witness, H.G. Prophitt, which previously had been produced for a depreciation rate hearing in Florida. In the memorandum, Prophitt discussed the need to deploy fiber optics in order to enhance Southern Bell's entrance into the video entertainment market utilizing fiber optics' broadband and video capabilities.

The PSC found that Southern Bell had no duty to produce the memorandum because SCCTA's interrogatories had requested studies upon which Southern Bell had relied regarding the economic feasibility of deploying fiber optics in South Carolina. The PSC discerned that a memorandum from another jurisdiction was irrelevant to Southern Bell's acts in South Carolina. Nevertheless, the PSC reviewed Prophitt's memorandum in detail and concluded that SCCTA had fully explored all the issues raised by the memorandum when it corss-examined Prophitt. We find substantial evidence in the record to support the PSC's conclusion that utilization of a more advanced technology will benefit Southern Bell's tele-

phone service subscribers, regardless of any commercial potential Southern Bell may be able to exploit in the future. We affirm the trial judge's holding that the PSC did not err in refusing to reconsider its order approving Southern Bell's application for approval of new depreciation rates.

## B.

SCCTA next contends that the PSC's findings concerning depreciation life were not supported by substantial evidence. We disagree.

Southern Bell's 1989 depreciation rate study indicates that metallic cable will be retired rapidly once deployment of fiber optics occurs, resulting in a shorter useful life for metallic cable than current depreciation rates reflect. SCCTA urges that the depreciation rates developed by Southern Bell are based upon Southern Bell's anticipated entrance into the video entertainment market, which allegedly will stimulate the utilization of fiber optics and accelerate the obsolescence of metallic cable. Thus, contends SCCTA, Southern Bell's depreciation study and Prophitt's testimony, which was premised upon the depreciation study, are predicated on speculation rather than on evidence of probative value.

Southern Bell, for its part, asserts that its depreciation study addressed metallic cable life cycles in scenarios analyzing both the potential broadband market as well as Southern Bell's current telephone-only services. Southern Bell offered projected lives of 18 years for aerial, 17 years for underground, and 18 years for buried metallic cable accounts, based on substitution of metallic cable with fiber optics for telephone services only.

The PSC reviewed a fiber optics cost curve analysis, a Fisher-Pry technology life cycle forecasting analysis, and several economic alternative analyses known as capital utilization criteria studies. The PSC rejected a historical mortality analysis and retirement patterns as failing to take into account recent advancements in technology and the effects of technological obsolescence. The PSC found the data developed by Southern Bell to be consistent with accepted economic and forecasting principles, and to be supported by other data considered by the PSC in setting new depreciation rates. The PSC staff recommended estimates of 20 years for aerial, 21

years for underground, and 21 years for buried metallic cable accounts.

The depreciation rates proposed by Southern Bell fall well within a range of figures supported by other depreciation studies utilizing different methodology.[2] We find that the trial judge did not err in concluding that the PSC's findings concerning depreciation life were supported by substantial evidence.

## C.

SCCTA next asserts that the PSC shifted the burden of proof to SCCTA to disprove Southern Bell's proposed depreciation rates. We disagree.

SCCTA's expert witness, W. Page Montgomery, gave his opinion as to deficiencies in Southern Bell's depreciation study, and testified in favor of the figures derived from the historical mortality analysis eventually rejected by the PSC. SCCTA contends that the PSC dismissed Montgomery's testimony because Montgomery failed to conduct an independent study to support his conclusion that Southern Bell's data were erroneous, thus improperly placing the burden of proof on Montgomery and SCCTA rather than on Southern Bell.

The PSC stated that it was unpersuaded by Montgomery's testimony because:

> [h]e had conducted no studies...; he was unaware of [the PSC's] prior decisions adopting life cycle and Fisher-Pry analysis . . . ; he asserted only *possible* inaccuracies in Southern Bell's studies as he could not point out specific errors, only *possible* alleged errors in judgment. (Emphasis in original.)

---

[2] The following chart reflects metallic cable accounts life estimates (in years):

| | Aerial | Under ground | Buried |
|---|---|---|---|
| Historic Mortality Analysis | 27.5 | 45.3 | 27 |
| Currently Approved | 22 | 28 | 23 |
| FCC Proposed | 22 | 28 | 23 |
| PSC Proposed and Approved | 20 | 21 | 21 |
| Southern Bell (w/o video) | 18 | 17 | 18 |
| Southern Bell (w/video) | 16 | 15 | 16 |
| IRS (tax purposes) | 15 | 15 | 15 |
| Cable TV average depreciation for "copper" plant | 12-15 | 12-15 | 12-15 |

Clearly, the PSC assigned little weight and credibility to Montgomery's testimony based not only on Montgomery's failure to develop his own figures, but also on the conjectures and incomplete information which comprised Montgomery's opinions. The weight and credibility assigned to evidence presented is a matter peculiarly within the province of the PSC. *Greyhound Lines*, 274 S.C. at 165, 262 S.E. (2d) at 20. We find that the PSC acted within its discretion in choosing to believe Prophitt over Montgomery. Accordingly, we affirm the trial judge's holding that the PSC did not impermissibly shift the burden of proof from Southern Bell to SCCTA.

## D.

SCCTA next asserts that the PSC's approval of increased depreciation rates improperly allows fiber optics, which it contends in plant not "used or useful" in providing telephone services, to be included in Southern Bell's rate base. We disagree.

The rate base for telephone service includes "gross plant used and useful in providing public services as reduced by the reserve for depreciation and amortization." *In re Southern Bell Telephone and Telegraph Co.*, 35 P.U.R. 4th 1 (S.C.P.S.C. 1980). According to SCCTA, Southern Bell is deploying fiber optics only to further Southern Bell's potential entry into the broadband and video market. SCCTA claims that because Southern Bell is purchasing fiber optics for its own speculative commercial benefit rather than for providing public telephone service, the fiber optics are not "used and useful in providing public services" and cannot justify an adjustment to Southern Bell's depreciation rates.

Fiber optics currently comprise fifty-nine percent of Southern Bell's interoffice equipped circuit miles and thirty-one percent of Southern Bell's feeder routes in South Carolina. The PSC found that Southern Bell will not expand its current utilization of fiber optics until and unless fiber optics are more economical to deploy for telephone services purposes than metallic cable. Moreover, the PSC possesses the authority to prevent Southern Bell from making an investment which would be detrimental to ratepayers. Accordingly, we find that the trial judge did no err in concluding that the PSC's approval of increased depreciation rates did not allow plant not

"used or useful" in providing telephone services to be included in Southern Bell's rate base.

### E.

SCCTA finally asserts that the PSC erred in refusing ■ to consider Southern Bell's earnings level before it approved new depreciation rates. We disagree.

Southern Bell stipulated that it would absorb the additional depreciation expense without seeking an increase in its local basic service rates. SCCTA claims that Southern Bell's failure to seek higher rates to compensate for the increase in depreciation expense indicates that Southern Bell is earning in excess of its authorized rate of return.

Southern Bell has the right to charge its subscribers annually a reasonable sum for depreciation as an operating expense to be credited to a reserve account. S.C. Code Ann. § 58-9-350 (1976). The PSC has the authority to conduct hearings at any time to determine whether depreciation reserves are excessive. *Id.* The PSC has interpreted this statutory scheme to allow it to consider depreciation issues separate from general rate cases wherein the PSC would analyze Southern Bell's rate base, revenues, rate of return, and other relevant factors. Consequently, for nearly thirty years representatives of the PSC, Federal Communications Commission, Southern Bell, and other regulatory agencies have conferenced on a triennial basis for the purpose of reviewing the depreciation rates utilized by southern Bell in order to ascertain whether the rates reasonably reflect consumption of existing plant.

Construction of a statute by the agency charged with executing it is entitled to the most respectful consideration and should not be overruled without cogent reasons. *Faile v. South Carolina Employment Security Commission,* 267 S.C. 536, 230 S.E. (2d) 219 (1976). We agree with the trial judge that SCCTA has advanced no cogent reason for this Court to overturn the PSC's interpretation of its statutory mandate. Accordingly, we find that the trial judge did not err in concluding that the PSC could approve new depreciation rates without considering Southern Bell's earnings level.

The order of the trial judge denying SCCTA's petition for judicial review is

Affirmed.

CHANDLER, FINNEY and MOORE, JJ., and CLARENCE T. GOOLSBY, Jr., Acting Associate Justice, concur.