20309

Robert P. FAILE, Respondent, v. The SOUTH CAROLINA EM-
PLOYMENT SECURITY COMMISSION and City of Rock Hill,
South Carolina, Appellants.

(230 S. E. (2d) 219)

*Robert G. Horine, Esq.,* of Columbia, *for Respondent-Appellant,*

*Messrs. Spencer and Spencer,* of Rock Hill, *for Petitioner-Respondent.*

November 11, 1976.

GREGORY, Justice:

The Employment Security Commission (hereinafter "Commission") appeals an order reversing its decision to disqualify respondent Faile from unemployment benefits for three weeks. The amount of money in question is Two Hundred and Twenty-Two ($222.00) Dollars.

The lower court found that Faile had quit his job with "good cause" (See § 68-114[1], South Carolina Code, Cum. Supp. 1975) because he was entering the armed services; therefore he should not have been disqualified from

benefits for any period. The court read § 68-112, S. C. Code, 1962 (saying that the Commission shall pass regulations to preserve the benefit rights of persons entering the armed services) as meaning that persons awaiting entrance into the military should get benefits during the waiting period. Thus § 68-112 "overrides" § 68-114(1) and provides the necessary "good cause" required by § 68-114(1) to confer benefits. We disagree with this interpretation of these sections and reverse.

Appellant argues three exceptions which can be combined into two issues: (1) does § 68-112 require the Commission to bestow benefits on persons awaiting the call to military duty? and (2) does § 68-112 require that quitting work to enlist in the armed services be considered to be with "good cause"?

The facts are simple. Faile was employed in the engineering department of the City of Rock Hill. He learned that several employees were to be laid off because of over-staffing. Faile was uncertain about his status. The record does not indicate why Faile thought he might be laid off; it does show that he quit without being asked to. Faile enlisted in the Air Force on March 20, 1975. The recruiters assured him that he could soon enter active duty although his induction date was August 8, 1975. He resigned from his job on March 26. The Air Force did not take him as early as he had expected and he entered a claim for unemployment compensation, effective April 20. Faile did not in fact enter active duty until August 8, the original induction date.

Faile's claim went through several levels of hearing at the Commission. Finally, in November of 1975, the full Commission found that: (1) Faile had been available for work from April 20 to August 8 and was thus eligible for benefits; and (2) he should be, however, disqualified for three weeks because of having left his work "voluntarily

without good cause" (§ 68-114[1]). The trial court nullified the disqualification and the Commission appealed.

As to the first issue: does § 68-112 require benefits to be conferred on persons awaiting entry in the services? We think it clear that the Commission is not required by § 68-112 to give benefits to persons *before* they enter the armed services. The section reads:

*"Preservation of benefit rights of persons in military, naval, etc., service.*—The Commission shall pass such regulations as may be necessary to preserve the benefit rights of individuals who have volunteered or enlisted or who have been called or drafted into any branch of the military or naval service of any organization affiliated with the defense of the United States or this State. Such regulations shall, with respect to such individuals, supersede any inconsistent provisions of this Title, but so far as practicable shall secure results reasonably similar to those provided in the analogous provisions of this Title."

Pursuant to this section and §§ 68-63 and 68-151( *Code,* 1962), the Commission promulgated Regulation XIX (Rules and Regulations of the State of North Carolina, S. C. Code, 1962; as amended March 8, 1976). The regulation clearly limits benefits to the period after persons are separated from the service. The March 1976 amendment to Regulation XIX extends the regulation to enlistees as well as draftees, thereby effectuating the 1955 amendment by the General Assembly (Act No. 254, Acts and Joint Resolutions, 1955) to § 68-112 which extended the section to enlistees.

The only question, then, that the first issue raises is whether the regulation properly reflects the intent of § 68-112. We conclude that it does. We draw this conclusion without deciding whether the regulation is a "legislative rule" (generally, having the force of law and becoming an integral part of the statute) or an "interpre-

tative rule" (generally, entitled to great respect by the courts but not binding upon them). (See 1 K. Davis, Administrative Law Treatise §§ 5.01-5.05, 1958, plus 1970 and 1976 supplements). The second sentence of § 68-112 suggests that the regulations shall have the force of law; however, even if viewed as an interpretation, the regulation is reasonable and well within the language of the statute. The construction of a statute by the agency charged with executing it is entitled to the most respectful consideration and should not be overruled without cogent reasons. *Poole v. Saxon Mills,* 192 S. C. 339, 6 S. E. (2d) 761 (1939) ; *City of Spartanburg v. Leonard,* 180 S. C. 491, 186 S. E. 395 (1936) ; see also *Davidson v. Eastern Fire and Casualty Company,* 245 S. C. 472, 475, 141 S. E. (2d) 135, 136 (1965).

We find no such cogent reasons. The statute directs the Commission to prescribe regulations and the Commission has done so. § 68-112 neither mandates nor precludes the extension of benefits to pre-inductees. In Regulation XIX the Commission has restricted benefits to the period after separation from the military, and we will not overturn this construction without compelling reasons. We also note that the regulation went into effect on August 10, 1942, and that the regulation has remained unchallenged by the legislature since then. Such acquiescence provides further reason for deferring to the administrative construction. See *Stone Manufacturing Co. v. S. C. Employment Security Commission,* 219 S. C. 239, 64 S. E. (2d) 644 (1951).

As to the second issue: does § 68-112 provide the necessary "good cause" required by § 68-114(1) to qualify a person for benefits? Since we have already upheld the determination by the Commission that § 68-112 does not apply to the facts of this case, we need not answer directly the second issue.

However, respondent might argue that regardless of the applicability of § 68-112, his termination of employment

was with "good cause." The section in question reads in part:

"§ 68-114. Disqualification for benefits.

(1) Leaving work voluntarily.—If the Commission finds that he has left voluntarily without good cause his most recent work prior to filing a request for determination of insured status or a request for initiation of a claim series within an established benefit year . . . as determined by the Commission according to the circumstances in the case . . ."

The only case in which the Court has construed the words "voluntarily without good cause" was *Stone Manufacturing Company v. S. C. Employment Security Commission, supra,* in which the Court examined § 7035-82(a) of the S. C. Code, 1942 (essentially the same as the present § 68-114[1]). In that case a woman quit her job in Columbia to move to North Carolina to live with her husband, who had been transferred there by the Army. The Court said, before citing several cases from other jurisdictions in support of its conclusion, the following:

"We think the words 'good cause' as used in the context contemplate, ordinarily at least, a cause attributable to or connected with claimant's employment. Assuming, without deciding, that there may be reasons personal to the employee in exceptional cases sufficient to constitute good cause, we do not think that it is a good cause within the purview of the Act for a wife to quit her employment for the purpose of accompanying and being with her husband." 219 S. C. at 257, 64 S. E. (2d) at 647.

A case in which the Court construed generally the S. C. Unemployment Compensation Law (§ 7035-81 *et seq.*, S. C. Code, 1942, the counterpart to the present § 68-1 *et seq.*) was *Judson Mills v. S. C. Unemployment Compensation Commission,* 204 S. C. 37, 28 S. E. (2d) 535 (1943). In that case a woman quit work at a mill because she had to care for her children during the only shift that the mill of-

fered her work. The Court found her "unavailable" for work (See § 7035-84, S. C. Code, 1942) and disallowed benefits. The Court regarded the Unemployment Compensation Law as: (1) a 1936 response to the Depression; and (2) an attack upon "involuntary unemployment" (204 S. C. at 40, 28 S. E. (2d) at 536). The Court found no intent to provide for persons who quit their jobs because of a change in their personal circumstances:

"I find nothing in the act itself or in the circumstances surrounding its passage to indicate an intention on the part of the Legislature to provide benefits for a worker compelled to give up his job solely because of a change in his personal circumstances." 204 S. C. at 41, 28 S. E. (2d) at 536.

We conclude that Faile did leave his job "voluntarily without good cause." It is undisputed that he was not "laid off" but resigned. His reliance on the recruiters' promises may have been well-intended but the only definite date given to him was August 8. His motives for enlisting may have been laudable and patriotic but his decision to enlist was his and in no sense forced upon him.

Accordingly, the order of the court below is reversed and the decision of the Commission dated November 26, 1975 is upheld. The Commission shall enter an order in accordance with our opinion pursuant to § 68-165, S. C. Code, 1962.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.