564 S.E.2d 341

**CONVERSE POWER CORPORATION, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENT CONTROL and South Carolina Board of Health and Environmental Control, Respondents.**

No. 3479.

Court of Appeals of South Carolina.

Heard March 6, 2002.
Decided April 15, 2002.
Rehearing Denied June 19, 2002.

Gregory J. English and William M. Wilson, Wyche, Burgess, Freeman & Parham, Greenville, for appellant.

General Counsel Samuel L. Finklea, III, South Carolina Department of Health and Environmental Control, Columbia, for respondents.

CURETON, J.

Converse Power Corporation (Converse) appeals the denial of its petition for an aquaculture permit to the South Carolina Department of Health and Environmental Control (DHEC). We affirm.

## FACTS/PROCEDURAL BACKGROUND

On May 30, 1997, Converse applied to DHEC for an aquaculture[1] permit for a proposed shellfish culture farm located at 130 Venture Boulevard, Spartanburg, South Carolina. The petition provided a sparse outline explaining Converse's proposed shellfish operation. On July 18, 1997, Converse requested a contested case hearing before an Administrative Law Judge (ALJ) alleging DHEC "acted arbitrarily, capriciously, and/or unreasonably in not acting upon, or even acknowledging the application" for the permit. DHEC subsequently filed a motion to dismiss based on Converse's failure to exhaust its administrative remedies. DHEC's motion was granted September 3, 1997, without prejudice.

In the interim, Converse and DHEC communicated at least three times by letters. On July 31, 1997, Converse supplemented its application identifying the proposed location site.

---

1. "Aquaculture means the cultivation of shellfish in land based artificial growing or harvest areas, or confined in natural growing or harvest areas...." S.C.Code. Ann. Regs. 61–47(A)(2)(d) (Supp.1999).

In the section reading "This facility will be available for INSPECTION on or after _____ (date)," Converse entered: "one year after permit is issued." In a responsive letter dated August 25, 1997, Michael Coker, Program Manager for DHEC's Shellfish Sanitation Program, asked Converse for more specific information regarding the operational plan of the proposed facility. Coker included three and a half pages of questions and suggestions regarding the requirements for a proper application. Coker closed his letter, in part, stating:

> In addition to the final site inspection required *prior to permit issuance,* my staff is available to visit your facility and provide technical assistance as necessary. Your application noted that your facility would be available for inspection one year from permit issuance. Please note that no permit to construct is required pursuant to R. 61–47.[2] The referenced permit is an operational permit required prior to sale and distribution of product. In essence, you may begin construction at any time. (emphasis added).

Converse responded on August 30, 1997, stating it believed its original aquaculture permit application satisfactorily complied with all applicable regulations. Converse closed this letter stating, "We will not begin construction until we have a permit."

On September 24, 1997, Converse filed a petition for mandamus with the ALJ Division in response to the September 3, 1997, dismissal of the action. On November 14, 1997, the ALJ ordered DHEC to respond to Converse's August letter. On November 18, 1997, Coker addressed Converse's application and concluded:

> I will be happy to discuss any of the above items with you. Please note that Regulation 61–47, Section G(2)(b) requires that *"the Department shall make inspections of the Shellfish Operation as may be necessary to determine compliance with the applicable provisions of this regulation."* As stated in previous correspondence, my staff is available to conduct a preliminary site inspection at your request; how-

---

**2.** Although subsequently amended by State Register Volume 24, Issue No. 5, eff. May 26, 2000, the applicable language at all times pertinent to the present appeal is found in 24A S.C.Code Ann. Regs. 61–47 (Supp.1999).

ever, the referenced permit is an operational permit required prior to sale and distribution of product and no aquaculture permit can be issued until construction of your facility is complete.

By letter dated November 21, 1997, Converse submitted a plat showing the boundary lines of the Venture Boulevard property. Converse reiterated its opinion that it had already furnished the information necessary to secure a permit. By letter dated December 15, 1997, Converse questioned DHEC's failure to respond to its application. On January 5, 1998, Converse filed a new Petition for Administrative Review based on DHEC's failure to issue a permit.

On January 14, 1998, Coker responded to Converse's November letter. Coker notified Converse that "the information provided lack[s] specifics and should be further refined prior to permit issuance" and that nothing in the regulations prevents Converse from "constructing a facility or conducting necessary operational testing and process verification...." Converse replied on February 4, 1998, expressing its "position ... that our application satisfies the law."

On April 24, 1998, DHEC denied Converse's permit application on the basis it was unable to conduct an inspection of the aquaculture facilities. Coker referenced Regulation 61–47(G)(2)(b), which DHEC "interprets ... to include the requirement [for DHEC] to conduct an inspection prior to permit issuance...." Coker concluded, "Since you have not constructed a facility, and you request a decision, the Department has no choice but to deny the permit."

Converse requested a contested hearing and on May 12, 1998, the ALJ conducted a hearing. At the start of the hearing, DHEC identified the absence of a facility to inspect as the sole basis of its denial of Converse's permit. During the hearing, Coker testified, however, that the management plan submitted by Converse failed to contain the detail necessary to support an application. Coker stated that although the application was insufficient, DHEC reviewed it and "the bottom line, the stopper, was the fact that there was no facility and [DHEC] could not conduct that initial permit issuance inspection."

E.D. Sloan, Jr., president of Converse, testified on Converse's behalf at the hearing. Sloan introduced the various documents Converse submitted for its permit application. He maintained that "those papers speak for themselves" and they complied with all regulatory requirements necessary for obtaining an aquaculture permit. On cross-examination, Sloan admitted that there was a small office building on site but that no aquaculture facility had been constructed. DHEC also questioned Sloan regarding the lack of specificity in the permit application. In response to the ALJ's questions, Sloan stated he did not have blueprints or a design because until he had a permit, he did not know what to build.

Coker testified the aquaculture permit is required for the *operation* of an aquaculture facility and is not required for construction prior to issuance of the permit. He explained the permitting requirements are "public health based" and designed to "make sure a healthy product reaches the market." He explained shellfish are "filter feeders," absorbing organisms and contaminants in the water, thus the need to properly regulate aquaculture facilities to protect the public's health is heightened. Coker stated that when inspecting an aquaculture facility, DHEC looks to the construction of the facility, its water flow, its materials, its water source, the type of shellfish cultivated, the facility's operating plan, and anything else that could "have an impact on the quality of the shellfish."

Coker explained that the regulations allow a facility to be constructed and shellfish to be grown to test the facility before an initial inspection and issuance of a permit as long as no shellfish are marketed for sale. Coker testified DHEC provided "any technical assistance necessary" during the construction of the applicant's facility before the permit is issued to ensure compliance with the regulations. Coker explained that the regulations refer to the National Shellfish Sanitation Program Manuals. DHEC relies on the national guidelines in assisting applicants in designing and building their facilities. Coker explained that DHEC denied the permit primarily because no facility had been constructed and secondarily because Converse's application was insufficiently detailed.

Thereafter, on June 15, 1998, the ALJ filed a final order denying Converse's application for an aquaculture permit.

The ALJ found that Converse's application: 1) failed to comply with the governing regulations requiring DHEC to inspect prior to issuance of a permit, and 2) was incomplete as it lacked information required by an applicant seeking an aquaculture permit.

Converse appealed the ALJ's order to the Board of Health and Environmental Control (the "Board").[3] Converse's permit application was discussed at a regular Board meeting conducted May 13, 1999. On June 29, 1999, the Board issued its order concluding "the Final Order and Decision of the Administrative Law Judge, including its findings of fact and conclusions of law, should be, and hereby is, adopted as the Order of the Board."

Converse appealed the Board's order to the circuit court. By order filed March 16, 2000, "[h]aving found sufficient evidence in the record" and finding DHEC reasonably interpreted its own regulations, the circuit court affirmed the Board's order. Converse appeals.

## STANDARD OF REVIEW

Pursuant to the Administrative Procedures Act,[4] the ALJ presided as the fact-finder in the hearing of this contested case. *See Brown v. S.C. Dep't of Health & Envtl. Control*, 348 S.C. 507, 512, 560 S.E.2d 410, 413 (Sup.Ct.2002) (finding the ALJ presided as the fact-finder in a similarly postured contested action against DHEC). The Board reviewed the ALJ's order in its appellate capacity, limited by the scope of review established in § 1–23–610(D) (Supp.2001).[5] The circuit court,

---

3. Prior to a review of the merits, the parties litigated the issue of which party had the responsibility to provide a transcript of the ALJ hearing to the Board. On appeal, the circuit court determined the Board was required to consider the merits of Converse's appeal "as soon as [Converse] provides the Board with the transcript of the hearing before the Administrative Law Judge."

4. S.C.Code Ann. §§ 1–23–310 to –660 (1986 & Supp.2001).

5. The review of the administrative law judge's order must be confined to the record. The reviewing tribunal may affirm the decision or remand the case for further proceedings; or it may reverse or modify the decision if the substantive rights of the petitioner [have] been prejudiced because . . . the finding, conclusion, or decision is:

pursuant to § 1-23-380(A)(6) (Supp.2001), reviewed the Board's order to determine whether it properly applied its scope of review.

 We likewise review the circuit court order to determine if it properly applied its standard of review. Our review is also governed by § 1-23-380(A)(6) (Supp.2001), which is similar to that established in § 1-23-610(D). *See Reliance Ins. Co. v. Smith,* 327 S.C. 528, 535-36 n. 6, 489 S.E.2d 674, 678 n. 6 (Ct.App.1997) (noting the standards of review established under § 1-23-380(A)(6) and § 1-23-610(D) are essentially identical). Under our standard of review, we may not substitute our judgment for that of an agency as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative and substantial evidence in the whole record. *Lark v. Bi-Lo, Inc.,* 276 S.C. 130, 136, 276 S.E.2d 304, 307 (1981). Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached. *Stokes v. First Nat'l Bank,* 306 S.C. 46, 50, 410 S.E.2d 248, 251 (1991).

 The ALJ, as the fact-finder, must make sufficiently detailed findings supporting the denial of a permit application. *See Kiawah Prop. Owners Group v. Pub. Serv. Comm'n,* 338 S.C. 92, 95-96, 525 S.E.2d 863, 865 (1999). Detailed findings enable this court, as a reviewing court, to determine whether such findings are supported by the evidence and whether the law has been applied properly to the findings. *Id.* at 96, 525 S.E.2d at 865.

## DISCUSSION

Converse argues DHEC arbitrarily and capriciously denied its application for an aquaculture permit. We disagree.

---

(a) *in violation of constitutional or statutory provisions;*
(b) in excess of the statutory authority of the agency;
(c) made upon unlawful procedure;
(d) affected by other error of law;
(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

██ "A decision is arbitrary if it is without a rational basis, is based alone on one's will and not upon any course of reasoning and exercise of judgment, is made at pleasure, without adequate determining principles, or is governed by no fixed rules or standards." *Deese v. State Bd. of Dentistry,* 286 S.C. 182, 184–85, 332 S.E.2d 539, 541 (Ct.App.1985). DHEC is charged with enforcing the provisions of Regulation 61–47 "to protect the health of consumers of shellfish" in South Carolina. 24A S.C.Code Ann. Regs. 61–47(A)(1) (Supp.1999). *See also* S.C.Code Ann. § 44–1–140(5) (2002) (authorizing DHEC to promulgate sanitation regulations for the harvesting, storing, processing, handling, and transportation of molluscan shellfish). "The delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public." *City of Columbia v. Bd. of Health & Envtl. Control,* 292 S.C. 199, 202, 355 S.E.2d 536, 538 (1987).

At the time Converse applied for a permit, DHEC's Regulation 61–47(G)(1)(b) required an aquaculture permit to operate a facility distributing shellfish to the public. 24A S.C.Code Ann. Regs. 61–47(G)(1)(b) (Supp.1999). Regulation 61–47(G)(2)(b) provided: "Upon receipt of a completed application form, the Department shall make inspections of the shellfish operation as may be necessary to determine compliance with the applicable provisions of this Regulation." 24A S.C.Code. Ann. Regs. 61–47(G)(2)(b) (Supp.1999).[6]

Regulation 61–47(G)(2) (Supp.1999), entitled "Issuance of Permits," provides:

(b) Upon receipt of a completed application form, the Department shall make inspections of the shellfish operation as may be necessary to determine compliance with the applicable provisions of this Regulation[.]

██ When interpreting a regulation, we look for the plain and ordinary meaning of the words of the regulation, without resort to subtle or forced construction to limit or expand the regulation's operation. *Byerly v. Connor,* 307 S.C. 441, 444,

---

**6.** As amended, the regulations now require petitioning parties to obtain both an "Aquaculture Facility Construction Permit" as well as an "Aquaculture Facility Operating Permit." 24A S.C.Code Ann. Regs. 61–47(G)(1)(b)(7) & (8) (Supp.2001).

415 S.E.2d 796, 799 (1992). *See Whitner v. State*, 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997) (Where a statute is complete, plain, and unambiguous, legislative intent must be determined from the language of the statute itself.). The construction of a regulation by the agency charged with executing the regulations is entitled to the most respectful consideration and should not be overruled without cogent reasons. *Faile v. S.C. Employment Sec. Comm'n*, 267 S.C. 536, 540, 230 S.E.2d 219, 221–22 (1976).

█ DHEC interprets the regulations as requiring a facility to exist and be inspected before a permit to operate is issued. We find DHEC's interpretation of the regulations is reasonable and not arbitrary or capricious. Regulation 61–47(G)(2) requires DHEC to inspect "an operation" prior to issuing a permit. The language requiring inspections prior to issuance clearly anticipates an operating facility at the time of inspection. Converse applied for an aquaculture permit in order to cultivate and sell shellfish to the public. Converse's intended future operation plainly falls within the regulatory definition of an aquaculture operation. As such, before Converse supplies its product to the public, it must obtain a valid aquaculture permit. S.C.Code Ann. Regs. 61–47(G)(1)(b) & (O)(1)(b)(1) (Supp.1999). We find no ambiguity in the regulations supporting Converse's argument that the regulation does not require them to build their facility prior to inspection.

Converse also argues the amendment to the regulations providing for construction permits in addition to operations permits supports its argument that the regulations existing at the time of Converse's application did not require them to construct their facility prior to issuance of an operations permit. We disagree.

█ In interpreting a regulatory amendment, we presume a regulatory agency, in adopting an amendment to a regulation, intended to make a change in the existing law. *Cf. Vernon v. Harleysville Mut. Cas. Co.*, 244 S.C. 152, 157, 135 S.E.2d 841, 844 (1964) (presuming the legislature, in adopting an amendment to a statute, intended to make some change in the existing law); *State ex rel. McLeod v. Montgomery*, 244 S.C. 308, 314, 136 S.E.2d 778, 782 (1964) ("In seeking the intention of the legislature, [the court] must presume that it

intended by its action to accomplish something and not to do a futile thing."). Although prior to and after the amendment the regulations do not permit an operational permit without inspection of the proposed site, an applicant is now entitled to apply for a construction permit prior to constructing a facility. We find the amendment lends further support to DHEC's belief that, at the time of Converse's application, the regulations required the construction of the facility prior to issuance of the operational permit.

Converse additionally argues DHEC's interpretation is inequitable to applicants. We disagree. Throughout the application process, Coker offered assistance to Converse in developing its plans and providing technical assistance in the construction of a facility. In addition to changing the regulatory requirements for receiving aquaculture permits, the amendment somewhat conforms to DHEC's actual practice prior to the amendment in assisting its applicants in designing and building an appropriate facility.

## CONCLUSION

We find DHEC's denial was based on its own reasonable interpretation of the regulations. Accordingly, we do not find the decision arbitrary or capricious.[7] The parties agreed at oral argument that Converse could now proceed under the amended regulations and apply for a construction permit. For the foregoing reasons, the decision of the trial court upholding DHEC's decision is

**AFFIRMED.**

---

7. Because we find support in the record for DHEC's denial of Converse's application for a permit, we need not reach Converse's argument that the ALJ erred in finding its application insufficient. Under the amended regulations, and citing *State ex rel Carter v. State,* 325 S.C. 204, 481 S.E.2d 429 (1997), DHEC argues Converse's action is now moot. We distinguish *Carter* from this case. In *Carter,* a taxpayer was challenging the constitutionality of certain capital gains tax legislation first enacted by the General Assembly in 1988 and amended in 1989. *Carter,* 325 S.C. at 205–07, 481 S.E.2d at 429–30. As the taxpayer never challenged the Act as *amended,* the supreme court found the action was moot. *Id.* at 205–07, 481 S.E.2d at 430–31. By contrast, the amendment to Regulation 61–47(G)(2) does not moot Converse's challenge that DHEC should have issued it an aquaculture permit without requiring the aquaculture facility to first be constructed.

GOOLSBY, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, J. (dissenting):

I vote to **REVERSE.** Converse Power Corporation ("Converse") was entitled to issuance of an aquaculture permit by the Department of Health and Environmental Control ("DHEC") under the provisions of the pre-amended Regulation 61–47.

## FACTS/PROCEDURAL BACKGROUND

Converse appealed the denial of its aquaculture permit request and a contested case hearing was conducted before the Administrative Law Judge ("ALJ") on May 12, 1998.[8] At this hearing, DHEC identified as the "sole basis" for its denial of Converse's permit was its "inability to perform an inspection" in that there was no facility for DHEC to inspect.

Only two persons testified before the ALJ: E.D. Sloan, Jr., president of Converse, proceeding *pro se,* and Michael M. Coker, Manager of DHEC's Shellfish Sanitation Section in the Trident EQC District. During his direct testimony, Sloan introduced the various documents Converse submitted for its permit application. He maintained that "those papers speak for themselves" and they complied with all regulatory requirements necessary for obtaining an aquaculture permit. On cross examination, Sloan admitted that no aquaculture facility has yet been constructed and that he has never operated such a facility before. DHEC additionally questioned Sloan regarding the lack of specificity in the permit application. The ALJ also conducted the following examination:

> The Court: Mr. Sloan, if we were to go out and look at 130 Venture Boulevard now, the location, to inspect it, what exactly would we see?
>
> Sloan: You'd see a small, one-story office building and a parking lot and a grassy area behind it.
>
> The Court: Do you have blueprints or any type of plan that shows what you intend to build there?

---

8. Docket No. 98–ALJ–07–0032–CC.

Sloan: No, sir, and for good reason.

The Court: And what is that reason?

Sloan: I'm unable to design it without knowing the conditions of the permit.

The Court: *So your position is that unless and until you have permit, you don't know exactly what you would build?*

Sloan: *That's correct.*

(emphasis added).

Coker, on the other hand, testified an aquaculture permit is required merely for the operation of the aquaculture facility and that construction can take place without the permit being issued. He explained the permitting requirements are "public health based" and designed to "make sure a healthy product reaches the market." Since shellfish are "filter feeders," *i.e.*, entities that take up any organisms or contaminants in the water and retain it in their bodies, the need to properly regulate aquaculture facilities to protect the public's health is heightened. Coker testified that when inspecting an aquaculture facility, DHEC looks to the construction of the facility, its water flow, its materials, its water source, the type of shellfish cultivated, the facility's operating plan, and anything else "that could be constructed in such a manner it could have an impact on the quality of the shellfish." Coker then explained why Converse's permit was denied:

Based on correspondence with Mr. Sloan's company, there has been *no facility constructed, was the primary reason.* Additionally, the S.O.P., I call it, the management plan, that was submitted did not contain all the detail we would like to see ultimately, however, we allowed the process, the application process, to continue with what he had provided.

So I would say *the bottom line, the stopper, was the fact that there was no facility and we could not conduct that initial permit issuance inspection.* There was nothing for us to go out, look at, and show compliance with his operational plan he had submitted.

(emphasis added).

Lastly, Coker opined, despite the specific language of the pre-amended Regulation 61–47(G)(1)(b)(5), which states "[i]t

shall be unlawful for any person to relay, distribute in interstate commerce, distribute to a certified shipper, harvest for depuration, deplete, wet store, conduct aquaculture activities, or process shellfish who does not possess the appropriate valid ... Aquaculture Permit," that the regulation allows an aquaculture facility to be constructed and shellfish to be grown to test the facility before an initial inspection and permit is given as long as no shellfish are marketed for sale. Coker assured the ALJ that DHEC could provide "any technical assistance necessary" during the construction of the applicant's facility before the permit is issued to ensure compliance with the regulations.

On June 15, 1998, the ALJ filed its "Final Order and Decision" affirming DHEC's denial of the aquaculture permit.[9] The ALJ's last six conclusions of law were:

15. Petitioner's application for an aquaculture permit fails to comply with R. 61–47.G.1.(e).

16. Petitioner's application fails to meet the requirements of R. 61–47.O.1(d) for a shellfish aquaculture permit.

17. Petitioner's application fails to meet the requirements of R. 61–47.O.4(d)[10] for a land based aquaculture permit.

18. Petitioner's application is incomplete because it does not include specific, relevant, and necessary information required to be detailed by an applicant seeking an aquaculture permit under R. 61–47.

19. DHEC is unable to make inspections of the proposed shellfish operation, pursuant to R. 61–47.G.2(b), as is necessary to determine compliance with the requirements of R. 61–47.

20. Without the ability to determine whether Petitioner's shellfish cultivation facility and operation will perform in a manner which produces shellfish safe for human consumption, Petitioner's application must be denied.

---

9. Docket No. 98–ALJ–07–0032–CC.

10. Although Regulation 61–47 (Supp.1999) contains subpart (O)(4) for direction for "Land Based Shellfish Aquaculture permit applicants," it only contains subsections (a) through (c).

Converse appealed to the Board of Health and Environmental Control ("the Board") for quasi-judicial review of the ALJ's June 15th Final Order. After extensive correspondence between Sloan and the Board, including an appeal to the Circuit Court regarding which party had the duty to supply the transcript of the record before the ALJ to the Board,[11] Converse's permit application was considered at a regular Board meeting conducted May 13, 1999. On June 29, 1999, the Board issued its two paragraph "Order of the Board," which found "the Final Order and Decision of the Administrative Law Judge, including its findings of fact and conclusions of law, should be, and hereby is, adopted as the Order of the Board."

Converse appealed the Board's Order to the Circuit Court. By order filed March 16, 2000, "[h]aving found sufficient evidence in the record" and concluding DHEC had made a "reasonable interpretation of the regulation," the Circuit Court affirmed the Board's determination. Converse appeals.

## LAW/ANALYSIS

Section 1–23–380 governs the standard of judicial review in this case. As is similar in a quasi-judicial review of any final decision of an ALJ,[12] this Court's review in the instant action is limited and it is "confined to the record." S.C.Code. Ann. § 1–23–380(A)(5) (Supp.2001).

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

---

11. In its Final Order filed January 27, 1999 (Case No. 98–CP–23–3744), the Circuit Court determined the Board was required to consider the merits of Converse's appeal "as soon as Converse provides the Board with the transcript of hearing before the Administrative Law Judge."

12. S.C.Code Ann. § 1–23–610 (Supp.2001).

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* at (A)(6).

Coker, in his capacity as the DHEC Section Manager for the Shellfish Sanitation Section, stated in his April 24, 1998, letter denying Converse's aquaculture permit application that the sole reason the permit was denied was because, under Regulation 61–47(G)(2)(b), DHEC was unable to inspect any facility. Likewise, in the ALJ hearing, DHEC confirmed that the sole basis for denial of the permit was its "inability to perform an inspection." No other issues regarding the sufficiency of Converse's permit application were identified as issues for review before the ALJ. In fact, after Sloan finished his presentation of his case, which consisted merely of introducing all of the application correspondence to the ALJ, the ALJ denied DHEC's motion for an involuntary nonsuit because the petition application made by Converse "at least meets the minimum requirements [of the regulation]." Therefore, the ALJ's findings of fact and conclusions of law regarding purported application deficiencies other than Converse's lack of any facility for inspection were clearly erroneous, beyond the scope of the ALJ's review of DHEC's initial order, and, therefore, not before this Court.

Converse argues DHEC committed an error of law and acted arbitrarily and capriciously in denying the aquaculture permit merely because Converse had not yet constructed an aquaculture facility for DHEC to inspect. I agree.

DHEC is charged with enforcing the provisions of Regulation 61–47 "to protect the health of consumers of shellfish" in South Carolina. 24A S.C.Code Ann. Regs. 61–47(A)(1) (Supp. 2001). Generally, the delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public. *City of Columbia v. Board of Health & Envtl. Control,* 292 S.C. 199, 355 S.E.2d 536 (1987). However, this delegation does not go unchecked. DHEC must follow its own

regulations and the provisions of the Administrative Procedures Act[13] in carrying out the legitimate purposes of the agency. *Triska v. DHEC*, 292 S.C. 190, 355 S.E.2d 531 (1987). Thus, any action taken by DHEC outside of its statutory and regulatory authority is null and void. *Id.*

"An administrative body must make findings which are sufficiently detailed to enable this Court to determine whether the findings are supported by the evidence and whether the law has been applied properly to those findings." *Kiawah Property Owners Group v. Public Serv. Comm'n of S.C.*, 338 S.C. 92, 95–96, 525 S.E.2d 863, 865 (1999) (quoting *Porter v. S.C. Public Serv. Comm'n*, 333 S.C. 12, 21, 507 S.E.2d 328, 332 (1998)). That is, "[t]his Court will not accept an administrative agency's decision at face value without requiring the agency to explain its reasoning." *Id.* at 96, 525 S.E.2d at 865 (citation omitted).

Regulation 61–47(G)(2) (Supp.1999), titled "Issuance of Permits," provides:

(a) An application shall be made on a form provided by the Department.

(b) Upon receipt of a completed application form, the Department shall make inspections of the shellfish operation as may be necessary to determine compliance with the applicable provisions of this Regulation;

(c) A permit of certificate may be suspended or revoked as stated in Items H.1(b) and H.1(d).

Regulation 61–47(G)(1)(b) (Supp.1999) provides, among nine other named types of certificates and permits, only one version of "Aquaculture Permit." "Aquaculture means the cultivation of shellfish in land based artificial growing or harvest areas, or confined in natural growing or harvest areas as designated by permit from South Carolina Department of Natural Resources." 24A S.C.Code Ann. Regs. 61–47(A)(2)(d) (Supp.1999).[14] Furthermore, "Growing area means an area which supports or could support live shellfish" and "Harvester

13. S.C.Code Ann. §§ 1–23–310 to –660 (1986 & Supp.2001).

14. The amendment to this definition merely added: "For purposes of this regulation, aquaculture is synonymous with mariculture." S.C.Code. Ann. Regs. 61–47(A)(2)(d) (Supp.2001).

means a person who gathers shellfish by any means from a growing area." 24 A S.C.Code Ann. Regs. 61–47(A)(2)(s) & (t) (Supp.1999).[15]

As with other forms of statutory construction, the words of a regulation must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the regulation's operation. *Byerly v. Connor*, 307 S.C. 441, 415 S.E.2d 796 (1992); *see also State v. Dickinson*, 339 S.C. 194, 199, 528 S.E.2d 675, 677 (Ct.App.2000), *cert. denied* ("[T]he cardinal rule of statutory construction is that the court must ascertain and effectuate the intent of the legislature, and in interpreting a statute, the court must give the words their plain and ordinary meaning without resorting to a tortured construction which limits or expands the statute's operation.") (citations omitted).

Converse, at all times, has been attempting to obtain an aquaculture permit from DHEC in order to begin cultivating and selling shellfish to the public. Converse's intended future business clearly falls within the above definitions for an aquaculture activity. As such, before Converse commences with any aquaculture activities of cultivating shellfish, it must obtain a valid aquaculture permit. 24A S.C.Code Ann. Regs. 61–47(G)(1)(b) & (O)(1)(b)(1) (Supp.1999). In light of this lucent permitting requirement, Coker's opinion that cultivating shellfish as long as they never reach the human consumption market does not violate the regulation is clearly disingenuous. We must apply the regulation as written, not as merely applied by DHEC.

Nowhere, however, does the applicable regulation actually require the facility to be constructed before an aquaculture permit can be issued. The regulation merely requires the proper permit before any aquaculture activities are commenced. DHEC's correspondence clearly enunciates its desire for more specific information regarding Converse's plan for operation. Arguably, DHEC could have denied Converse's permit application for its lack of specificity,[16] as the ALJ

---

**15.** In the amended Regulation 61–47, the definition for "Growing area" is renumbered at (y) and for "Harvester" at (cc).

**16.** 24A S.C.Code Ann. Regs. 61–47(O)(1)(d) (Supp.1999) provides: "Applications for Aquaculture Permits must contain a written operational plan detailing the scope and extent of the operation."

apparently found convincing; however, that issue is not before this court for review. Instead, we are asked to review whether DHEC's decision to deny Converse's permit application based solely on the fact that there is not yet an operational facility to inspect. Coker testified that, during a facility inspection, DHEC examines many factors, including whether satisfactory building materials and building designs were used. Thus, if Converse completed a facility, but used inadequate building materials, no permit would be issued. Although Coker offered his assistance to Converse for interim inspections of the facility's construction, there is likewise no requirement for the permit petitioner to placate DHEC by making substantial investments into constructing an aquaculture facility with no guarantee that the facility will comply with DHEC's permitting requirements when construction is completed. DHEC's denial of Converse's permit request merely because no facility was completed was clearly arbitrary and capricious.

"A decision is arbitrary if it is without a rational basis, is based alone on one's will and not upon any course of reasoning and exercise of judgment, is made at pleasure, without adequate determining principles, or is governed by no fixed rules or standards." *Deese v. South Carolina State Bd. of Dentistry*, 286 S.C. 182, 184–85, 332 S.E.2d 539, 541 (Ct.App.1985) (citing *Hatcher v. South Carolina Dist. Council of Assemblies of God, Inc.*, 267 S.C. 107, 226 S.E.2d 253 (1976) and *Turbeville v. Morris*, 203 S.C. 287, 26 S.E.2d 821 (1943)). None of the appellate proceedings below corrected DHEC's initial error in relying solely on its inability to inspect a facility. DHEC's basis for denying the aquaculture permit was not supported by Regulation 61–47 (Supp.1999).

Indubitably, the majority opinion grants to the Department of Health and Environmental Control the unfettered and unlimited authority to construe its own regulations. This is error. I vote to *REVERSE* the decision of the circuit judge in affirming the Board's order.