565 S.E.2d 119

**Paul Dexter DORMAN, II, and Charles R. May, III, M.D., Respondents,**

**v.**

**South Carolina DEPARTMENT OF HEALTH AND ENVIRON-MENTAL CONTROL and Bureau of Ocean and Coastal Resource Management, and Frances Pate Adams, Defendants, of whom Frances Pate Adams is, Appellant.**

**No. 3502.**

Court of Appeals of South Carolina.

Heard April 17, 2002.

Decided May 28, 2002.

160

David J. Gundling, and Jeffrey J. Galan, both of Pawley's Island, for appellant.

Howell V. Bellamy, Jr., and Douglas M. Zayicek, both of Bellamy, Rutenburg, Copeland, Epps, Gravely & Bowers, of Myrtle Beach, for respondents.

STILWELL, Judge:

Frances Pate Adams appeals the circuit court's order reinstating the Administrative Law Judge's (ALJ's) denial of a dock permit, which was overturned on appeal by the Coastal Zone Management Appellate Panel (the Panel) of the Bureau of Ocean and Coastal Resource Management (OCRM).[1] We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL BACKGROUND

LaFon LeGette[2] applied for a critical area permit to build a boat dock with a roof and floating dock. OCRM initially

---

1. The Panel was the governing board of OCRM at all times pertinent to this appeal.

2. Appellant Adams is the land owner; LeGette was a potential buyer, but the contract of sale had a condition that the dock permit could be obtained. On appeal to the circuit court, LeGette sought to withdraw from the litigation, and Adams moved to substitute as a party. The circuit court denied the motion to substitute Adams for LeGette because it was made just before hearing. This court granted her motion, and no exception has been taken to that ruling.

granted the permit, but the neighbors on both sides, Dorman and May, objected and requested a contested case hearing because the proposed boat dock would crowd too close to their existing docks and because the roof would impinge on their view. Adams' lot is pie-shaped, with only 33 feet of water frontage, so any dock configuration will necessarily cross the extended property lines of the neighboring lots.

The ALJ reversed the OCRM staff's determination and denied the permit because the dock (1) would obstruct navigation and create problems with May's floating dock, (2) would cross extended property lines and no justification was given for an exception to the general rule, (3) would rest on the mud bottom at low tide, and (4) would diminish the use and enjoyment of neighboring lots. He stated none of these grounds individually was significant enough to deny the permit, but cumulatively they posed a serious problem. He ruled Regulation 30–12.A(2)(o), which requires that a lot have minimum water frontage of 50 feet to qualify for a dock permit, was not applicable, since the lot was platted prior to 1993. He did not directly rule on the issue of whether the dock roof would seriously impact views, but his ruling as to diminishment and enjoyment of neighboring lots effectively did so. He balanced the factors under S.C.Code Ann. § 48–39–150(A) to be considered in granting or denying a permit, which was within his discretion.

On appeal, the Panel reversed the ALJ and reinstated the grant of the permit. The Panel made its own findings of fact, on which it based its legal conclusions that the purpose and policy of the Regulation would not be undermined by granting the permit. The Panel concluded the ALJ incorrectly interpreted "navigation" within the meaning of the regulations. "It is the position of OCRM that any navigational issues between docks is a private property owner issue. It is not the policy of OCRM to police navigational disputes that should be dealt with among the adjacent property owners." The Panel also found, based on its own review of the record below, that the dock would not rest on the creek bottom at normal low tide and that the dock as permitted would not diminish the enjoyment or value of adjacent land owners. Finally, the Panel held that OCRM was properly before it as a party on appeal.

The circuit court reversed the Panel, holding that it applied the wrong standard of review and improperly substituted its judgment for that of the ALJ. Alternatively, the circuit court held the petition for review was insufficient, and therefore the appeal should have been dismissed for lack of jurisdiction, and OCRM was not properly a party on appeal, since it did not appeal from the ALJ's order. The circuit court judge ruled the ALJ's interpretation of all subsections of Regulation 30–12.A(2) at issue were supported by substantial evidence, except subsection (o), which he held prohibited lots with less than fifty feet of water frontage from having a dock. Thus, the circuit court reinstated the ALJ's order as modified.

## LAW/ANALYSIS

### Standard of Review:  Substantial Evidence Standard

As the parties acknowledge, the crucial and perhaps dispositive issue in this appeal revolves around applying the correct standard of review.

> This case involves appearances before four tribunals and includes three levels of appellate review. . . . [T]he ALJ presided as the fact-finder . . . [and] was not sitting in an appellate capacity and was not restricted to a review of OCRM's permit decision. . . .

> The first appellate review . . . by the Board [was] under its limited scope of review set forth in § 1–23–610(D). The second appellate review [before] the circuit court . . . is [governed by the standard] set forth in § 1–23–380(A)(6). . . . Our scope of review is the same as that established for the circuit court. § 1–23–380(A)(6).

*Brown v. S.C. Dep't of Health & Envtl. Control,* 348 S.C. 507, 512, 560 S.E.2d 410, 413 (2002). "[I]n environmental permitting cases, the ALJ presides as the finder of fact. § 1–23–600(B). . . . The Board, on the other hand, sits as a quasi-judicial tribunal in reviewing the final decision of the ALJ. § 1–23–610(A). As the 'reviewing tribunal,' the Board is not entitled to make findings of fact. . . ." *Id.,* 348 S.C. at 520, 560 S.E.2d at 417; *see also Converse Power Corp. v. S.C. Dep't of Health & Envtl. Control,* 350 S.C. 39, 45, 564 S.E.2d 341, 345 (Ct.App. 2002).

On appeal, the standard for appellate review to the Panel is whether the ALJ's findings are supported by substantial evidence under S.C.Code Ann. § 1–23–610(D) (Supp. 2001).[3] " 'The "possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." ' " *Leventis v. S.C. Dep't of Health & Envtl. Control,* 340 S.C. 118, 130–31, 530 S.E.2d 643, 650 (Ct.App.2000) *cert. denied* (June 13, 2000). Substantial evidence "is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached...." *Lark v. Bi–Lo,* 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). The Panel cannot reweigh the facts or make findings of fact in accord with its own view of the evidence. The Panel can validly reverse the ALJ based on an error of law under this appellate standard or if his findings are not supported by substantial evidence. The Panel stated the ALJ misinterpreted navigation in the regulations to include issues between neighbors. Thus, that portion of the Panel's order on OCRM policy underlying navigation and construing its regulation was proper.

Adams cites the recent cases of *McQueen* and *Guerard,* both issued since the creation of the Administrative Law Judge Division (ALJD) for the proposition that the Panel retains essentially a de novo standard of review and may make its own findings based on its own review of the evidence. *McQueen v. S.C. Coastal Council,* 329 S.C. 588, 496 S.E.2d 643 (Ct.App.1998), *rev'd* 340 S.C. 65, 530 S.E.2d 628 (2000), *vacated and remanded by* 533 U.S. 943, 121 S.Ct. 2581, 150 L.Ed.2d 742 (2001) in light of *Palazzolo v. Rhode Island,* 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). *Guerard v. Whitner,* 276 S.C. 521, 280 S.E.2d 539 (1981). Initially, we note that the first is on dubious legal footing and the second was decided well before the creation of the ALJD.

Adams misapprehends the operative date in these decisions. The key date is not when the decisions were published but

---

**3.** *See also* Jean Hoefer Toal et al., *Appellate Practice in S.C.* (1999) 56–57 ("The scope of review of final ALJ decisions is essentially identical to the scope of review established in section 1–23–380. This scope of review applies to the circuit court or the applicable board or commission.")

when the cases were heard below and what procedure they followed. The ALJD was created by the Restructuring Act of 1993. 1993 Act No. 181, §§ 11–19 (eff. July 1, 1993), 1993 S.C. Acts 1407, 1433–1448 (codified as amended at S.C.Code Ann. §§ 1–23–310 to –660 (Supp.2001).) Both of these cases, though decided after the creation of the ALJD, were heard in the first instance by the Board as a contested case, and hence retained the old standard of review.

Under the applicable standard of review in cases heard by the ALJ, the Board or Panel must affirm the ALJ if the findings are supported by substantial evidence, not based on the Panel's own view of the evidence. To hold otherwise would contravene the clear mandate of § 1–23–610(D) and render the ALJ process a superfluous nullity.

## I. Interpretation of Regulation 30–12.A(2)

On appeal, Adams challenges the interpretation and application of several subsections of Regulation 30–12.A(2) [4] governing dock permits.

(a) Docks ... shall normally be limited to one structure per parcel and shall not impede navigation or restrict the reasonable public use of State lands and waters; ...

(n) Docks must extend to the first navigable creek ... and floating docks which rest upon the bottom at normal low tide will not normally be permitted.

(o) For lots platted and recorded after May 23, 1993, ... [l]ots less than 50 feet wide are not eligible for a dock.

(p) No docks ... should normally be allowed to be built closer than 20 feet from extended property lines.... However, the Department may allow construction closer than 20 feet or over extended property lines where there is no material harm to the policies of the Act.

...

(r) Roofs on private docks will be permitted on a case-by-case basis, with consideration given to the individual merits

---

4. Regulation 30–12 was substantially rewritten, effective June 25, 1999. Judge Breeden's order is dated August 14, 1998. Because none of the changes are substantive but merely clarified the existing regulation, we have cited to the current version. The changes are set forth in 23 S.C. Reg., No. 6, 107 (June 25, 1999).

of each application. Precedent in the vicinity for similar structures will be considered as well as the potential for impacting the views of others. Roofs which have the potential to seriously impact views will not be allowed, while those that have minimal impact may be allowed. . . .

23A S.C.Code Ann. Regs. 30–12.A(2) (Supp.2001)

■■■ Initially, we address the circuit court's ruling that reversed both the ALJ and the Panel's finding that Regulation 30–12.A(2)(*o*) is inapplicable to this case because the lot in question was platted before 1993. By its clear terms, this subsection is inapplicable to this lot and does not prohibit the issuance of a dock permit in this case. *See Brown* at 414 ("Where the terms of the statute are clear, the court must apply those terms according to their literal meaning."). We therefore reverse the circuit court on this issue.

■■■ Turning to the difference in the construction and interpretation of Regulation 30–12.A(2)(a), we note that while the ALJD is an independent entity, it still functions as an arm of the agency for purposes of according the agency deference in interpretation. " '[T]he construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons.' " *Id.* Moreover, the Panel, in interpreting its regulations, may reverse the ALJ as a matter of law and is entitled to deference on appeal.

The ALJ denied the permit at least partially on the finding that the dock would obstruct navigation and create problems with the adjoining dock. The Panel, in interpreting its own regulation, held that navigation, as contemplated in the regulation, did not encompass problems between neighbors or conflict with nearby docks but only applied to impediments to the general public's use of State waters.

Adams argues that because May's floating dock, which is the primary one that causes navigational problems, is not permitted, Adams' dock permit should be evaluated as if it were not there. The correct approach is to consider this dock permit in light of what is actually there, as did the ALJ. S.C.Code Ann. § 48–39–150(A) (Supp.2001) provides that each permit must be considered on its own merits. The ALJ is

confined to make his decision on the record before him, as are we.

> [J]udicial prudence dictates and our statute mandates that the record reflect accurately evidence which forms the basis of decisions independent of any consideration to contemplated remedial action, the result thereof, or the occurrence of any other future event. This requirement aborts the potential for continuing controversy spawned by litigation of this nature.

*Weaver v. S.C. Coastal Council,* 309 S.C. 368, 375, 423 S.E.2d 340, 344 (1992). Thus, the illegality of May's dock is an issue for another day.

Because the ALJ premised his denial on the confluence of factors, this case must be remanded to the ALJD to reconsider his findings based on the OCRM Panel's interpretation and application of its own regulations. Because we remand for reconsideration by the ALJD, we do not find it necessary to address the other subsections of the regulation pertaining to water access, resting on the mud bottom, extended property lines, or roofs and the impact on neighboring views.

## II. Sufficiency of the Petition for Review

■ Adams argues the circuit court erred in holding the petition for review insufficiently set forth the legal grounds for appeal to confer jurisdiction. We agree. The applicable regulations for OCRM cases are 30–6 and 30–7, not 61–72, which applies to DHEC matters.[5] 23A S.C.Code Ann. Regs. 30–6 & 30–7 (Supp.2001). Regulation 30–6 requires only a bare bones petition of basically the party's name and permit number. Thus, this petition was sufficient. Obviously, the SCACR do not apply in proceedings before the Panel, and the appeal process is much more informal than court requirements.

---

5. Regulation 61–72 sets forth procedures for contested cases, but the DHEC Board no longer hears contested cases. It has numerous conflicts with the ALJD Rules and is of questionable validity in light of the subsequent creation of the ALJD. The ALJs have generally held that 61–72 controls the time frames for appeal and related matters but that ALJD Rules control once the ALJD has jurisdiction. *Cf. Mictronics, Inc. v. S.C. Dep't of Revenue,* 345 S.C. 506, 510, 548 S.E.2d 223, 225–26 (Ct.App.2001) (ALJD Rules are applicable to proceedings before ALJ, not SCRCP.).

██ Respondents argue correctly that Regulations 30–6 and 30–7 as currently written were not in effect at the time of this appeal.[6] However, the requirements under the prior version for the petition for review were substantively the same. Respondents argue that the S.C. Administrative Procedures Act (APA) trumps agency-specific statutes. *See Pringle v. Builders Transp.*, 298 S.C. 494, 381 S.E.2d 731 (1989). This is true of pre-existing agency-specific statutes where the two conflict, but it is not true of statutes and regulations enacted since the APA. As Regulations 30–6 and 30–7 were substantially amended after the passage of the APA, we must presume some modification was intended and the action did not result in a futile act. *See TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998). "In interpreting a regulatory amendment, we presume a regulatory agency, in adopting an amendment to a regulation, intended to make a change in the existing law." *Converse* at 48, 564 S.E.2d at 346. The minimal petition for review required under OCRM regulations is consistent with the purpose of providing notice of the appeal.

### III. OCRM as a Party on Appeal

██ In response to the Panel's reversal of the ALJ and grant of the permit, Respondent argues that because OCRM did not appeal the ALJ's order, it should not have been permitted to argue the agency's viewpoint or interpretation of its regulations before the Panel or the circuit court on appeal. Thus, Respondent reasons the Panel had no authority to interpret the meaning of "navigation" at the appellate hearing. We disagree.

While OCRM did not appeal the ALJ's order, the agency remains a party at all levels to represent the agency and its policy stance. While we do not hold that the OCRM staff is a necessary party on appeal, we find it clearly is a proper party. In *Owen Steel*, this court held that the agency was not a necessary party to the appeal and was not required to be made a party on appeal by statute. *Owen Steel Co. v. S.C.*

---

6. Regulations 30–6 and 30–7 were substantially rewritten contemporaneously with Regulation 30–12.A, effective June 25, 1999, to reflect the modified procedure for appeal after the creation of the ALJD. *See* n. 2, *supra*.

*Tax Comm'n,* 281 S.C. 80, 84–85, 313 S.E.2d 636, 639 (Ct.App. 1984). "In considering whether there is a defect of parties, the distinction between necessary and proper parties is crucial." *Id.* However, the agency may be a proper party on appeal, and the APA requires an appellant to serve the agency with a copy of the petition for review to ensure it has notice of any proceeding. *Id.* at 85–86, 313 S.E.2d at 638. Upon notice, the agency may petition to be made a party to the appeal. "Except in unusual circumstances, we anticipate that such a motion would be granted as a matter of course." *Id.*

Similarly, our supreme court has held that "whether or not additional parties are proper to a controversy is left to the sound discretion of the Trial Judge subject to review by appeal." *Robinson v. S.C. State Highway Dep't,* 241 S.C. 137, 141, 127 S.E.2d 286, 287 (1962). Applications to bring in additional parties are ordinarily granted as a matter of course, especially where to do so will not injure the other parties. *Id.* at 141, 127 S.E.2d at 288. The Panel relies on reports of its staff. Clearly, the agency is charged with administering its permitting regulations and is charged with "insur[ing] consistent permit evaluations by the Department." S.C.Code Ann. Regs. 30–1.A(2)(b) (Supp.2001). Thus, we find no error in the Panel's and circuit court's decisions to allow counsel for OCRM to present arguments as to the proper implementation and interpretation of those regulations the agency is charged with administering.

Respondent argues that to define this term is beyond the Panel's statutory authority on appeal. We strongly disagree. Moreover, even if OCRM was not properly before the Panel on appeal, the Panel always has the ability to interpret and define terms within its own regulations consistent with its enabling statute. OCRM is charged with administering coastal zone permits and promulgating regulations governing construction in critical areas. S.C.Code Ann. § 48–39–50 (Supp. 2001). Thus, the Panel did not exceed its authority in interpreting "navigation" and correcting the ALJ for an error of law under the standard of review as set forth in S.C.Code Ann. § 1–23–610(D) (Supp.2001).

## IV. Constitutional Claims

Adams first raised the regulatory taking issue to the Panel and the due process and equal protection issues

before this court. Because none of these constitutional arguments were presented to the ALJ, they are not preserved for appellate review and thus are not properly before us. Adams argues that she made repeated requests for equal treatment at every level. That is insufficient. The legal theory on which she seeks to prevail must be raised to and ruled upon by the ALJ.

> In reviewing the final decision of an administrative agency, the circuit court sits as an appellate court. Consequently, issues not raised to and ruled on by the agency are not preserved for judicial consideration. Likewise, issues not raised to and ruled on by the ALJ are not preserved for appellate consideration.

*Brown* at 519, 560 S.E.2d at 417 (citations omitted). While it is true that ALJs cannot rule on a facial challenge to the constitutionality of a regulation or statute, ALJs can rule on whether a law as applied violates constitutional rights. "ALJs [cannot] rule on the validity of a statute. However, an agency or ALJ can still rule on whether a party's constitutional rights have been violated. . . . [M]erely asserting an alleged constitutional violation will not allow a party to avoid an administrative ruling." *Ward v. State,* 343 S.C. 14, 18, 538 S.E.2d 245, 247 (2000) (also, claimant is not required to exhaust administrative remedies when challenging the constitutionality of a statute).

## CONCLUSION

Because the ALJ's factual findings are supported by substantial evidence in the record, the Panel erred in making its own findings of fact and reweighing the evidence. Because the agency's interpretation of its regulations through the Panel and the ALJ is accorded deference, we adopt the Panel's interpretation of navigation. We hold that Regulation 30–12.A(2)(*o*) by its plain language does not apply. The petition for review was sufficient to confer jurisdiction under Regulations 30–6 and 30–7. OCRM remains a proper party before the Panel and the courts on appeal. Because the ALJ accorded significant weight to his interpretation of navigation under the regulations and stated that none of the subsections individually was a substantial enough reason to deny the permit, we remand this case to the ALJD for determination of

whether the permit should issue in light of the Panel's interpretation of its own regulations.

The ALJ should evaluate the permit based on the records of the contested case hearing below but also has discretion to take any additional evidence necessary to this determination.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and HOWARD, JJ., concur.