648 S.E.2d 310

**Linda McPhail WILSON, Respondent,**

**v.**

**STATE BUDGET AND CONTROL BOARD EMPLOYEE INSURANCE PROGRAM, Appellant.**

**No. 4269.**

Court of Appeals of South Carolina.

Heard June 5, 2007.

Decided June 29, 2007.

Michael T. Brittingham and James T. Hedgepath, of Greenville, for Appellant.

G. Conrad Derrick, of Florence, for Respondent.

HEARN, C.J.:

The State Budget and Control Board Employee Insurance Program (the Insurance Program) appeals the circuit court's award of long term disability benefits to Linda McPhail Wilson. The Insurance Program argues the circuit court exceeded its scope of review when it reversed the Long Term Disability Appeals Committee's denial of Wilson's claim. We agree and reverse.

## FACTS

Wilson, a "job developer" for the Darlington County Disabilities and Special Needs Board, applied for long term disability benefits after she was involved in an automobile accident on

April 28, 2001. She sought disability benefits due to an alleged injury to her lower back and knee.

Initially, Wilson's claim was reviewed by Standard Insurance Company (Standard), the third-party claims administrator for her long term disability plan. Standard denied the claim, and Wilson requested a review of the denial. For the review, Wilson submitted additional medical records, but again, Standard denied her claim. After receiving this second denial, Wilson sought an independent review from Standard's Quality Assurance Unit, which also denied Wilson's claim. After this denial, Wilson pursued an appeal to the Employee Insurance Program's Long Term Disability Appeals Committee (Appeals Committee). This three-member committee conducted a de novo review of Wilson's Long Term Disability Insurance Plan (the Insurance Plan) and Wilson's medical records.

According to the Insurance Plan, employees are considered disabled if an injury renders them unable to perform "with reasonable continuity the Material Duties of [their] Own Occupation." The Insurance Plan further explains:

> Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as your regular and ordinary employment with the Employer. Your Own Occupation is not limited to your job with your Employer.

According to the generic description of a "Job Developer," the position involves standing, walking, sitting, lifting, carrying, pushing, pulling, climbing, stooping, kneeling, crouching, crawling, and reaching, among other less strenuous activities. However, Wilson's supervisor, Christopher Woods, stated that Wilson's job merely required frequent driving, walking, and standing with no lifting. Furthermore, Karol Paquette, Wilson's vocational case manager, reported that the physical requirements of Wilson's job did not require crawling, kneeling, crouching, or climbing. Paquette opined that Wilson's job might fall in the "sedentary to light range of strength."

In addition to this evidence regarding Wilson's "Own Occupation," the Appeals Committee also reviewed a long transcript of medical records from five different physicians: Dr. Hyler, Wilson's family doctor; Dr. Faulstich, Wilson's radiolo-

gist; Dr. Healy, a neurologist; Dr. Beeson, a board-certified internist; and Dr. DeMichele, a neurologist.

Dr. Hyler noted that Wilson experienced "spasms and pain in [her] lower back," and he recommended she stop working after the accident. He referred Wilson to a neurologist. As of July 5, 2001, Dr. Hyler opined she could likely return to work in three months.

On June 6, 2001, Dr. Faulstich performed an MRI of Wilson's spine and found no abnormalities. The record before the Appeals Committee also contained an X–Ray of Wilson's spine taken the day of her accident. This X–Ray did not reveal any abnormalities either.

Dr. Healy, the neurologist to whom Dr. Hyler referred Wilson, also reviewed the June 6, 2001 MRI and found it "unremarkable." He suggested Wilson pursue physical therapy to alleviate her pain.

Dr. Beeson reviewed Wilson's medical records at the behest of Standard, the third-party insurer. In August of 2002, he found that based on the information from Wilson's treating physicians, Wilson could "continue to work in a sedentary or light occupation such as that of a job development specialist."

In October of 2002, Wilson consulted Dr. DeMichele, who ordered a bone scan of Wilson's entire body. The bone scan showed signs of arthritis in Wilson's back. Dr. DeMichele also had Wilson participate in a lower body nerve conduction study. The results showed evidence of nerve damage in Wilson's left leg.

After visiting with Dr. DeMichele, Wilson submitted the results of her bone scan and nerve conduction study to Dr. Beeson. Even in light of this additional information, Dr. Beeson was of the opinion that Wilson could perform a light work occupation.

Before the Appeals Committee made its determination, Wilson submitted a February 18, 2003 note from Dr. De-Michele, which stated Wilson was "totally and permanently disabled." Wilson also submitted notes from her March 19, 2003 visit with Dr. DeMichele, which stated, "If they could read, they would see a nerve conduction study ... which shows diffuse polyneuropathy in [Wilson's] lower extremity."

The notes also opined that Wilson had osteoarthritis and other problems in her lower back.

With these facts before it, the Appeals Committee unanimously denied Wilson's claim, finding "insufficient medical documentation to support limitations or restrictions that continued through the end of the [Plan's 90–day Benefit Waiting Period]." The Appeals Committee also found Wilson's occupation involved "sedentary-light work" and that she was capable of performing the duties required of her.

After receiving this decision from the Appeals Committee, Wilson submitted documentation establishing that she had been approved to receive Social Security Disability. The Appeals Committee reconsidered the case in light of the finding of disability by the Social Security Administration, but reaffirmed its denial of Wilson's claim. The Appeals Committee noted that it was bound by the Long Term Disability Income Benefit Plan, and the information provided regarding Social Security benefits did not alter the Committee's original decision that Wilson did not meet the Plan's definition of disabled.

Wilson appealed this decision to the circuit court. After hearing oral argument from counsel, the circuit court suggested an independent medical examination be conducted by Dr. Donald Johnson, a surgeon at the Southeastern Spine Institute. Both parties consented, and Dr. Johnson examined Wilson and her medical records. Based on his examination, Dr. Johnson opined: "Based on the medical records, particularly the objective information that I have seen, I would expect that this patient should be able to return to sedentary/light work."

Despite Dr. Johnson's independent medical examination, the circuit court found the decision of the Appeals Committee was arbitrary, capricious, and clearly erroneous in light of the substantial evidence in the record. Specifically, the circuit court found the Appeals Committee erred in relying on the opinion of Dr. Beeson, a non-treating internist, rather than on the opinions of her treating physicians, particularly that of Dr. Hyler and Dr. DeMichele. Pursuant to its holding, the circuit court awarded Wilson $36,800 in retroactive benefits and

continuing benefits as allowed under the Long Term Disability policy. This appeal followed.

## STANDARD OF REVIEW

Pursuant to section 1–23–380(6) of the South Carolina Code (2005), when the circuit court reviews the final decision of an agency, "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Rather, the decision of the agency should be affirmed unless it is clearly erroneous in light of the substantial evidence in the record, is arbitrary or capricious, or is affected by other error of law. S.C.Code Ann. § 1–23–380(6) (2005).

## LAW/ANALYSIS

The Insurance Program argues the circuit court erred in finding the denial of benefits to Wilson was not supported by substantial evidence. We agree.

Although Wilson presented evidence to the Appeals Committee supporting her disability claim, the Committee also had before it substantial evidence to the contrary. The X–Ray of Wilson's spine taken immediately after the accident showed no abnormalities, and both Dr. Faulstich and Dr. Healy found no abnormalities in the MRI performed on Wilson's lumbar spine in June of 2001. Based on a review of Wilson's medical records, Dr. Beeson unequivocally found Wilson was not disabled. Furthermore, substantial evidence in the record supported the finding that Wilson's job required light to sedentary work. Thus, even though the bone scan showed that Wilson suffered from osteoarthritis, substantial evidence did not demonstrate why such a condition would prevent her from performing light duties. Notably, both parties consented to allowing Dr. Johnson to perform an independent medical examination of Wilson for the circuit court's benefit. Dr. Johnson's opinion reaffirmed the opinion of the Appeals Committee that Wilson was capable of performing light work.

While we recognize that Dr. DeMichele and the Social Security Administration found otherwise, we remain cognizant that as an appellate court, we must affirm an agency's decision when substantial evidence supports the decision. *See Converse Power Corp. v. S.C. Dep't of Health and Envtl. Control,*

350 S.C. 39, 46, 564 S.E.2d 341, 345 (Ct.App.2002) ("Under our standard of review, we may not substitute our judgment for that of an agency unless the agency's findings are clearly erroneous in view of the reliable, probative and substantial evidence in the whole record."). Accordingly, based on the substantial evidence refuting Wilson's disability claims, the circuit court's award of benefits is

**REVERSED.**

KITTREDGE, J., and CURETON, A.J., concur.