THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Ex Parte: State
 Budget and Control Board, Employee Insurance Program, Appellant,
 In Re:
 Doris B.
 Sheffield, Respondent,
 v.
 The State of South Carolina, Defendant.
 
 
 

Appeal From Hampton County
 Carmen T. Mullen, Circuit Court Judge
Unpublished Opinion No. 2008-UP-310
Submitted June 2, 2008  Filed June 18,
 2008
REVERSED

 
 
 
 James T. Hedgepath, of Greenville; and Michael T. Brittingham and Roshella
 James, of Columbia, for Appellant.
 Lee Deer Cope, of Hampton, for Respondent.
 
 
 

GOOLSBY, A.J.:  The State Budget and Control Board Employee Insurance Program (the Insurance
 Program) appeals the trial courts award of long-term disability benefits to
 Doris B. Sheffield.  We reverse. [1] 
FACTS
Sheffield taught special education in Hampton County School
 District 1 (the District).  In 2004, Sheffield filed a claim for long-term
 disability benefits, alleging she was unable to work because she suffered
 rheumatoid arthritis and Sjögrens syndrome.[2] 
Sheffields
 claim was initially reviewed by Standard Insurance Company (Standard), the
 third-party claims administrator for her long term disability plan.  Standard
 denied the claim, and Sheffield requested a review. Again, Standard denied the
 claim.  In addition, Standards Quality Assurance Unit denied the claim
 after conducting an independent review.  Sheffield next appealed to the
 Employee Insurance Programs Long-Term Disability Appeals Committee (Appeals
 Committee).  The Appeals Committee reviewed Sheffields Long-Term Disability
 Income Benefit Plan (the Plan), Sheffields medical records, and all other
 documents contained in the administrative record. 
According to the Plan, employees are disabled if a physical
 disease, injury, pregnancy, or mental disorder renders them unable to perform
 with reasonable continuity the Material Duties of [their] Own Occupation.  The
 Plan further provides, Own Occupation means any employment, business, trade,
 profession, calling or vocation that involves Material Duties of the same
 general character as [the employees] regular and ordinary employment with the
 Employer. . . . 
The job description for a Classroom Teacher in District 1
 contains the following duties:

 
 
 1. 
 Instruct students for specified time and in 
 specified subjects as outlined in the teachers contract, the 
 Defined Minimum Program and according to the districts and the 
 schools policies.
 
 
 
 2.  
 Supervise students in classroom, in halls, in 
 lunchroom, on playgrounds and in boarding buses and extra-curricular 
 activities.
 
 

Karol Paquette,
 Sheffields vocational case manager, classified Sheffields occupation as
 Teacher, Mentally Impaired.  Paquette added Sheffields position included
 light physical demands.  
The Appeals Committee also reviewed Sheffields medical records.  The records included documents from Dr. Welcker, Sheffields
 family physician, and Dr. Nussbaum, Sheffields rheumatologist.  In
 addition, the Appeals Committee considered the opinions of Dr. Ingram and Dr. Fraback,
 rheumatologists hired by Standard to review Sheffields medical records and
 provide opinions as to her condition.  Although Sheffield also sought treatment
 with an ear, nose, and throat specialist (ENT), she failed to submit ENT medical
 records to Standard or the Appeals Committee.  The Appeals Committee,
 therefore, did not review these medical records, and Dr. Ingram and Dr. Fraback
 were unaware of any diagnosis or treatment by the ENT.    
Dr.
 Welker, who initially diagnosed Sheffield with rheumatoid arthritis and Sjögrens syndrome, opined Sheffield was unable to work due to the
 physical limitations resulting from her conditions.  He added Sheffield was unable to walk, sit, or stand for any period of time.  He also noted Sheffield suffered from garbled speech that could prevent public speaking.  Dr. Nussbaum noted
 Sheffield suffered joint swelling, stiffness and pain, dry mouth due to
 salivary gland failure, and low back pain.  He described Sheffields condition
 as a chronic illness which is unlikely to improve.  Dr. Nussbaum, however,
 opined by letter dated August 13, 2004, that Sheffield had difficulty with
 prolonged standing and walking, but was otherwise able to work without
 difficulty.  Dr. Nussbaum later opined Sheffield could walk or stand for up to
 one hour at a time and Sheffield could walk or stand for four hours during an
 eight hour work day.  Dr. Nussbaum added Sheffield could sit for up to two
 hours at a time and she could sit for up to six hours during the work day.  Ultimately,
 Dr. Nussbaum concluded Sheffield was not physically able to return to work.  
Dr. Ingram and Dr. Fraback opined Sheffields conditions did not preclude her from returning to her occupation.  Dr.
 Ingram found Sheffields medical records do not show significant rheumatoid
 arthritis, such that her rheumatologist does not recommend that she begin a
 second-line agent, which is recommended in all but the most minimal rheumatoid
 arthritis.    Dr. Fraback agreed, finding her rheumatoid arthritis
 appeared to be mild to moderate.  With respect to Sheffields Sjögrens syndrome, Dr. Ingram commented as follows:

 The dry oral mucosa is documented, as well as at least two years
 of treatment with agents to increase salivary production.  There is no mention
 that she has been advised to use oral wetting agents, the typical
 recommendations of sucking lemon drops or frequent sips of water.  Furthermore,
 in the classroom, amplification and microphones are easily available to
 teachers and there is no indication she has requested that modification . . .
 .  

Dr. Fraback
 noted, While she does have Sjögrens syndrome, the most recent note from
 the rheumatologist indicated that [her condition] was somewhat better with a
 new drug Evaxac . . . .  Dr. Fraback added It would be unusual for Sjögrens syndrome to preclude speaking if the speaker had the
 ability to sip water as needed.  
The Appeals Committee unanimously denied
 Sheffields claim, finding the administrative record did not indicate Sheffield was unable to perform the duties of her occupation as a teacher for the mentally
 impaired.  The Appeals Committee relied on Dr. Nussbaums letter of August 13,
 2004 that stated Sheffield had difficulty with prolonged standing and walking,
 but was otherwise able to continue her employment.  The Appeals Committee
 further noted Dr. Nussbaums opinion that Sheffield could walk or stand for
 four hours and sit for six hours.  They added Standards rheumatologist
 consultants agreed Sheffields claim file did not indicate Sheffield was
 physically unable to perform her Own Occupation.  
Sheffield appealed this decision to the circuit court.  The circuit court reversed the
 Appeals Committees decision.  This appeal followed.  

LAW / ANALYSIS
The Insurance Program argues the circuit
 court erred in finding the Appeals Committees denial of Sheffields claim was
 not supported by substantial evidence.  We agree.
Section
 1-11-710(C) of the South Carolina Code (Supp. 2007) provides:

 [C]laims for benefits under any self-insured plan of insurance offered by 
 the State to state and public school district employees and other
 eligible individuals must be resolved by procedures established by the [South
 Carolina Budget and Control Board], which shall constitute the exclusive remedy
 for these claims, subject only to appellate judicial review consistent with the
 standards provided in Section 1-23-380.

 Pursuant to section
 1-23-380(A)(5) of the South Carolina Code (Supp 2007), an appellate court, when
 reviewing the final decision of an agency, may not substitute its judgment for
 the judgment of the agency as to the weight of the evidence on questions of
 fact.  Rather, the decision of the agency should be affirmed unless it is
 clearly erroneous in light of the substantial evidence on the record, is
 arbitrary or capricious, or is affected by other error of law. Id.; see Wilson v. State Budget & Contol Bd. Employee Ins. Program, 374 S.C.
 300, 648 S.E.2d 310 (Ct. App. 2007) (affirming the agencys denial of benefits
 and reversing the circuit courts award of benefits when the employee submitted
 evidence supporting her disability claim, but substantial evidence to the
 contrary supported the agencys decision).  Substantial evidence is not a mere
 scintilla of evidence, but evidence which, considering the record as a whole,
 would allow reasonable minds to reach the conclusion the agency reached.  Tiller
 v. Natl Health Care Ctr, 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999).  
Here, Sheffield submitted evidence of her disability. Substantial evidence to the contrary,
 however, supports the decision of the Appeals Committee.  As set forth above, Dr.
 Nussbaum stated Sheffield could walk or stand for four hours and sit for six
 hours.  In addition, Dr. Ingram and Dr. Fraback concluded Sheffields
 conditions did not preclude her from returning to work.  Specifically, Dr.
 Ingram and Dr. Fraback agreed Sheffields rheumatoid arthritis was mild to
 moderate and her dry mouth condition was treatable.  Because substantial
 evidence supports the Appeals Committees decision, the circuit courts award
 of benefits is   
REVERSED. 
KONDUROS, J., concurs.
SHORT, J., dissents
 in a separate opinion.
SHORT,
 J., (dissenting):  I respectfully dissent.
I
 recognize the very restrictive standard of review this court must employ when
 reviewing the decision of an agency under the Administrative Procedures Act, as
 noted in the majority opinion.  See S.C. Code Ann. § 1-23-380(A)(5) (Supp.
 2007).  After reviewing the Appeals Committees decision with great deference,
 however, I find the Committee erred in denying Sheffields claim.  I would
 affirm the circuit court.
Sheffield was diagnosed with rheumatoid arthritis and Sjögrens syndrome.  Sheffields
 family doctor, Glenn Welcker, saw and treated Sheffield.  Welcker referred Sheffield to an ENT specialist, Dr. C. Willy Schwenzfeier, who treated her for the Sjögrens
 syndrome.  Schwenzfeier referred Sheffield to a rheumatoid arthritis
 specialist, Dr. Alan Nussbaum.  Nussbaum saw and treated Sheffield for
 arthritis, concluding: (1) she had a chronic illness which is unlikely to
 improve; and (2) she is unable to function as a classroom teacher.  Nussbaum
 found Sheffields arthritis worsening.  Furthermore, Nussbaum responded Never
 to the insurance form question asking when he expected a fundamental change in
 condition.  Welcker likewise concluded Sheffield was unable to continue
 working.  
In
 comparison, the medical opinions relied upon by the Committee to deny benefits
 were made by two physicians, Shirley Ingram and Ronald Fraback, hired by the
 disability plan.  Neither of these physicians ever examined Sheffield.  Ingram
 opined Sheffields arthritis was not significant because Nussbaum did not
 recommend a particular treatment.  Ingram also questioned the impact of Sheffields Sjögrens syndrome because she could not review records of an ENT.  However, Sheffield was referred to and treated by an ENT and thereafter by Welcker.  Furthermore,
 Ingram concluded she was unable to assess [Sheffields] limitations as to her
 Sjögrens syndrome.  Fraback apparently incorrectly believed Sheffield was never
 referred to an ENT stating his belief an [ENT] consultation would be
 expected.  Fraback otherwise concluded Sheffields arthritis was only mild to
 moderate because she was being treated with minimal medication.  As found by
 the circuit court, these reviewing doctors did not specifically dispute
 Sheffields condition or the physical limitations imposed by Sheffields
 treating physicians.  Rather, they advocated different treatment methods. 
 Accordingly, I agree with the circuit courts finding that the Committees
 decision to deny the claim was erroneous.  I would affirm.

[1]  Because oral argument would not aid the court in
 resolving the issues on appeal, we decide this case without oral argument
 pursuant to Rule 215, SCACR.
[2]  Sjögrens syndrome is a disease that causes extreme
 dry mouth.