677 S.E.2d 591

**LEXINGTON LAW FIRM, Respondent,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF CONSUMER AFFAIRS, Appellant.**

No. 26648.

Supreme Court of South Carolina.

Heard March 4, 2009.

Decided May 12, 2009.

Carolyn Grube Lybarker and Danny Raymond Collins, both of South Carolina Department of Consumer Affairs, of Columbia, for Appellant.

Desa Ballard, of West Columbia, for Respondent.

Justice KITTREDGE.

This direct appeal requires the Court to construe an exemption to the licensing requirements of the South Carolina Consumer Credit Counseling Act. S.C.Code Ann § 37–7–101 to –122 (Supp.2008). Specifically, we must determine legislative intent concerning the "attorney at law" exemption in section 37–7–101(2)(b)(i). We hold that the South Carolina General Assembly intended to limit the "attorneys at law" exemption to attorneys authorized to practice law in this State when the attorney is "acting in the regular course" of his or her profession as an attorney. We reverse the contrary holding of the administrative law court.

## I.

■ The South Carolina Consumer Credit Counseling Act (Act) was enacted by the General Assembly in 2005. The Act's purpose was to bring regulation and supervision to the world of credit counseling in South Carolina. Under the Act a person may not engage in credit counseling in South Carolina unless properly licensed. S.C.Code Ann. § 37–7–102 (Supp. 2008). This enactment was part of a national trend among states to protect their citizens from deceptive conduct by unscrupulous credit counseling organizations preying on individuals unfamiliar with credit repair. Mary Spector, *Taming the Beast: Payday Loans, Regulatory Efforts, and Unintended Consequences*, 57 DEPAUL L.REV. 961, 985 n. 174 (Summer 2008).

An integral feature of the Act is the need for licensure of those who engage in credit counseling. The Act further defines credit counseling organizations but excludes certain professions and businesses, thus exempting them from licensure requirements. Specifically, the Act provides:

(2) "Credit counseling organization" means a person providing or offering to provide to consumers credit counseling

services for a fee, compensation, or gain, or in the expectation of a fee, compensation, or gain, including debt management plans.

(a) The business of credit counseling is conducted in this State if the credit counseling organization, its employees, or its agents are located in this State or if the credit counseling organization solicits or contracts with debtors located within this State.

(b) This term does not include the following when acting *in the regular course of their respective businesses and professions:*

(i) *attorneys at law;*

(ii) banks, fiduciaries, credit unions, savings and loan associations, and savings banks as duly authorized and admitted to transact business in the State of South Carolina;

(iii) a certified public accountant providing credit counseling advice pursuant to an accounting practice;

(iv) title insurers and abstract companies doing escrow business;

(v) judicial officers or others acting pursuant to court order;

(vi) nonprofit faith-based organizations;

(vii) counselors certified by the South Carolina Housing Authority to the extent engaged in counseling pursuant to Chapter 23, High–Cost and Consumer Home Loans. These counselors must be certified by the Housing Authority pursuant to Section 37–23–40;

(viii) mortgage brokers, real estate brokers, salesmen, and property managers licensed pursuant to Title 40; and

(ix) consumer reporting agencies as defined by 15 U.S.C. Section 1681(a)(f) and any person or agency, or any affiliate or subsidiary of a consumer reporting agency, that obtains consumer reports from the agency under a certification pursuant to 15 U.S.C. Section 1681(e)(a) for the purpose of reselling the report, or information contained in or derived from the report, to a consumer, or monitoring information in the report on behalf of a consumer.

S.C.Code Ann. § 37–7–101(2) (Supp.2008).

The Legislature delegated to the Department of Consumer Affairs (Department) responsibility for administering the Act. S.C.Code Ann. § 37–7–106 (Supp.2008).

The Department learned that a law firm based in Utah was providing credit counseling services to South Carolina citizens. The Department advised the Utah law firm of the Act and the need for credit counseling organizations to obtain licensure. The Utah law firm, styling itself as Lexington Law Firm, responded to the Department: "[f]or purposes of this letter only, Lexington [Law Firm] agrees that it is a credit counseling organization and provides consumer credit counseling as that term is defined at [section 37–7–101](3)(b)." However, the Utah law firm asserted the attorney at law exemption in section 37–7–101(2)(b)(i).

Before the Department could take action, Lexington Law Firm filed the underlying declaratory judgment action in the administrative law court (ALC) seeking a declaration that the Department lacks authority to issue exemptions, and moreover, a declaration that the law firm is entitled to the Act's attorney at law exemption.

The Department sought discovery from Lexington Law Firm in the ALC, including names, addresses, and bar admittances of Lexington Law Firm's attorneys. Lexington Law Firm objected stating:

> Objection. [Lexington Law Firm] objects to this Request on the grounds that it does not comply with the scope of Rule 34, SCRCP, in that it does not request any "designated documents" or "tangible things." In addition, this Request is not reasonably calculated to lead to the discovery of admissible evidence. Further, this Request seeks information which is not relevant to this action, and the Request is intended to harass [Lexington Law Firm].

The Department narrowed its request in a motion to compel production stating:

> The Department will revise the question to ask for state certificates, licenses or registrations pertaining to the states in which attorneys who service/have serviced South Carolina consumers are admitted to practice law. This item is relevant as the Petition states [Lexington Law Firm] engages in the practice of law.

Lexington Law Firm echoed its earlier response stating the request was "not relevant."

It is apparent from the ALC's grant of summary judgment for Lexington Law Firm that the trial court believed the nature of the law firm's legal/credit counseling practice was irrelevant, for its nominal status as "attorneys at law" automatically entitled the law firm to avail itself of the attorney exemption. The ALC rejected the Department's contention that the statutory exemptions are conditioned on section 37–7–101's limiting language, "when [the party seeking the exemption is] acting in the regular course of their respective businesses and professions." The ALC ruled:

Department does not have authority to grant or deny exemptions under the South Carolina Consumer Credit Counseling Act ... and because the [L]egislature has already provided an exemption to attorneys at law under the Act, Lexington Law [Firm] is exempt from application of the Act and not subject to regulation by the Department. . . .

The Department's appeal is before us pursuant to Rule 204(b) certification, SCACR.

## II.

The Department contends it has the authority, in the first instance, to determine if a credit counseling organization is exempt from the Act's licensing requirements. The Department additionally asserts that Lexington Law Firm is not entitled to the attorney at law exemption under the Act. We agree with the Department on both counts.

## A.

### The Department's Authority

■ The Department has authority over licensing under the Act, and that authority encompasses the initial determination, subject to judicial review, of whether a credit counseling organization satisfies a statutory exemption.[1] S.C.Code Ann. § 37–7–106 (Supp.2008).

Section 37–7–106 empowers the Department to "refuse to license an applicant or suspend or revoke a license or refuse to

---

1. At oral argument, Lexington Law Firm contended the Department's appropriate course of action would be to issue a cease and desist order under section 37–7–119. Under normal circumstances, we would agree, but Lexington Law Firm preempted the normal course of these

renew a license issued pursuant to this chapter if it finds, after notice and a hearing pursuant to the Administrative Procedures Act," the applicant was convicted of a felony or fraud; violated a provision of the Act; used fraud to obtain a license; participated in continuous unfair conduct; went bankrupt; or violated a reasonable rule or regulation made by the Department. Additionally, as Lexington Law Firm conceded at oral argument, the statute provides a two-step test to determine if a business is exempt. First, the business must qualify as one of the exempt categories and second, the organization must be acting in the regular course of its business. S.C.Code Ann. § 37–7–101(2)(b).

■ Therefore, as the Department is charged by the Legislature with issuing licenses and is in the best position to implement the statutory test, we hold the Department is authorized to determine if a party is exempt from obtaining a license. *See City of Rock Hill v. S.C. Dep't of Health and Envtl. Control,* 302 S.C. 161, 165, 394 S.E.2d 327, 330 (1990) ("As creatures of statute, regulatory bodies ... possess only those powers which are specifically delineated. By necessity however, a regulatory body possesses not only the powers expressly conferred on it but also those which must be inferred or implied to effectively carry out the duties for which it is charged.") (citing *City of Columbia v. Bd. of Health and Envtl. Control,* 292 S.C. 199, 202, 355 S.E.2d 536, 538 (1987)). Furthermore, this Court should defer to the Department's findings where there is no compelling reason to reject it. *Faile v. S.C. Employment Sec. Comm'n,* 267 S.C. 536, 540, 230 S.E.2d 219, 221–22 (1976) ("The construction of a statute by the agency charged with executing it is entitled to the most respectful consideration and should not be overruled without cogent reasons.").

## B.

### The Attorney at Law Exemption

■ Lexington Law Firm, as a matter of law, is not entitled to the "attorneys at law" exemption. As previously discussed, section 37–7–101(2) provides:

---

actions by the filing of its declaratory judgment action. Lexington Law Firm may not now complain that the Department failed to follow the preferred statutory course.

(2) "Credit counseling organization" means a person providing or offering to provide to consumers credit counseling services for a fee, compensation, or gain, or in the expectation of a fee, compensation, or gain, including debt management plans.

(a) The business of credit counseling is conducted in this State if the credit counseling organization, its employees, or its agents are located in this State or if the credit counseling organization solicits or contracts with debtors located within this State.

(b) This term does not include the following *when acting in the regular course of their respective businesses and professions:*

(i) *attorneys at law;*

(emphasis added).

None of the attorneys in Lexington Law Firm is authorized to practice law in South Carolina. The position of Lexington Law Firm is manifestly without merit. To accept Lexington Law Firm's view of the statute, we must accept the premise that the Legislature has sanctioned the unauthorized practice of law. The Legislature has done no such thing.

"There is a presumption that the [L]egislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted concerning related subjects." *State v. McKnight,* 352 S.C. 635, 648, 576 S.E.2d 168, 175 (2003). Thus, when enacting the Act, the General Assembly knew of South Carolina's laws and policies addressing the unauthorized practice of law, including section 40–5–310 of the South Carolina Code (2001) which makes it a crime to engage in the unauthorized practice of law. We therefore hold the General Assembly would not create an exemption condoning the unauthorized practice of law.[2]

██ Moreover, section 37–7–101(2)(b)'s conditional "regular course of ... business" language is unambiguous. The language indicates a clear legislative intent to limit the exemption

---

2. The authority to practice law in South Carolina arises in three circumstances: (1) a license to practice law from this Court; (2) authorization *pro hace vice* under Rule 404, SCACR; or (3) a limited certificate of admission under Rule 405, SCACR.

to a listed business (or profession) when the credit counseling service is part of the regular course of that business. If a statutorily enumerated business provides credit counseling services not in the regular course of its business, the exemption is unavailable. *McClanahan v. Richland County Council*, 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002) ("All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute.") (citation omitted); *First Baptist Church of Mauldin v. City of Mauldin*, 308 S.C. 226, 229, 417 S.E.2d 592, 593 (1992) ("In construing a statute, its words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation.") (citation omitted).

■ Further, the statute's plain language indicates the Legislature intended to exempt professions and businesses that are otherwise regulated. Other exemptions located in this section are of other professions and businesses subject to other licenses (such as certified public accountants, counselors certified by the South Carolina Housing Authority, and real estate brokers licensed pursuant to Title 40) as well as non-profit, faith-based organizations and judicial officers. Therefore, the Legislature expressed its intent to exempt businesses otherwise licensed in South Carolina and non-profit organizations.

Lexington Law Firm's final argument is that the providing of credit counseling services does not constitute the practice of law, and as such, its actions cannot constitute the unauthorized practice of law. The untenable dichotomy Lexington Law Firm advances is they fall under the attorney exemption but do not commit the unauthorized practice of law in South Carolina because they are conducting a business. Lexington Law Firm cannot have it both ways. As discussed, the statutory scheme limits the listed exemptions to those professions or businesses "when acting in the regular course of their respective businesses and professions." S.C.Code Ann. § 37–7–101(2)(b) (Supp.2008). If Lexington Law Firm is, in fact, acting in the regular course of the practice of law in South Carolina, then it is engaging in the unlawful unauthorized practice of law. Conversely, if Lexington Law Firm is merely

conducting a credit counseling business, then it may not gain relief from the statutory compliance requirements through the "attorneys at law" exemption.

## III.

In sum, we are not barring Lexington Law Firm from providing credit counseling services to South Carolinians, we are simply requiring Lexington Law Firm comply with the statutes enacted by our Legislature. Lexington Law Firm may not avail itself of an exemption for which it is not statutorily entitled.

We hold Lexington Law Firm is not exempt under section 37–7–101(2)(b) from licensure requirements and the Department of Consumer Affairs is statutorily empowered to determine if a business qualifies for an exemption. The judgment of the ALC is

**REVERSED.**

TOAL, C.J., WALLER, BEATTY, JJ., and Acting Justice JAMES E. MOORE, concur.