687 S.E.2d 321

**Lois KING and Deloris Sims, on behalf of themselves and all others similarly situated, Appellants,**

v.

**AMERICAN GENERAL FINANCE, INC., Respondent.**

No. 26710.

Supreme Court of South Carolina.

Heard June 10, 2009.
Re-filed Dec. 21, 2009.
Rehearing Denied Dec. 21, 2009.

C. Bradley Hutto, of Williams & Williams, of Orangeburg, Charles L. Dibble, of Dibble Law Offices, of Columbia, Daniel W. Williams, of Bedingfield & Williams, of Barnwell, Steven W. Hamm, C. Jo Anne Wessinger–Hill, and Jocelyn T. Newman, all of Richardson, Plowden & Robinson, of Columbia, T. Alexander Beard, of Beard Law Offices, of Mt. Pleasant, Thomas M. Fryar, of Columbia, for Appellants.

James Y. Becker and Sarah P. Spruill, both of Haynsworth, Sinkler Boyd, of Columbia, T. Thomas Cottingham, III and Sarah B. Kemble, of Hunton & Williams, of Charlotte, for Respondent.

Justice KITTREDGE.

In this case, Lois King and Deloris Sims, on behalf of themselves and those similarly situated, brought an action against American General Finance alleging the loan company violated the attorney preference statute by failing to timely ascertain the borrower's preference for legal counsel. S.C.Code Ann. § 37–10–102 (1989 & Supp. 1995). The class was certified, and subsequently decertified by a different trial court. The individual actions brought by King and Sims continued. American General was granted summary judgment as to King's action, and Sims's claim resulted in a defense jury verdict. We reverse the class decertification as well as the trial court's holdings in the individual cases. We remand this case to continue as a class action and allow the class action to once again envelop the individual cases.

## I.

This case is governed by section 37–10–102(a) (1989 & Supp. 1995), the so-called attorney preference statute, as it existed

prior to May 30, 1996.[1]  The statute provided that "[w]henever the primary purpose of a loan that is secured in whole or in part by a lien on real estate is for a personal, family or household purpose[,]" lenders such as American General were required to "ascertain the preference of the borrower as to the legal counsel that is employed to represent the debtor ... *and the credit application on the first page thereof must contain information as is necessary to ascertain these preferences of the borrower.*"  S.C.Code Ann. § 37–10–102(a) (1989 & Supp. 1995) (emphasis added).

The South Carolina Department of Consumer Affairs interpreted the timing provision of section 37–10–102(a) as follows:

In summary, the attorney and insurance agent preference need not be indicated directly on the application form so long as the borrower is presented a clear and conspicuous disclosure of this right prior to or contemporaneously with the application form.

S.C. Dep't of Consumer Affairs, Admin. Interpretation No. 10.102(a)–8302 (1983).

Relying on the statutory language that "the credit application on the first page" must ascertain the borrower's attorney preference, together with the 1983 Department of Consumer Affairs "administrative interpretation," King and Sims allege American General violated section 37–10–102(a) by failing to provide the necessary attorney preference disclosure at the time of their credit applications.  King and Sims brought this action on behalf of themselves and those similarly situated, and they allege this action implicates approximately five thousand loans.[2]

---

1.  Effective May 30, 1996, the Legislature amended section 37–10–102(a).  *See* Act No. 355, § 1, 1996 S.C. Acts 2187.  Following this amendment, a lender was required to notify the borrower prior to closing of the borrower's attorney preference rights by either: (1) including the information on or with the credit application, or (2) providing the borrower written notice of the preference information that is "delivered or mailed no later than three business days after the application is received or prepared."  S.C.Code Ann. § 37–10–102(a) (1989 & Supp. 1996).

2.  Section 37–10–105 of the South Carolina Code was amended again in 1997 to preclude class actions for subsequent violations of the attorney

King and Sims each closed a loan with American General in 1995. King sought a home improvement loan that was secured by her home. American General presented King with a Federal Disclosure Statement, which stated: "You are giving a security interest in your Real Estate. . . ." King additionally signed a "Security Agreement" that specifically listed an automobile as security for her loan. The "Security Agreement" further stated that the "mortgaged property" included "[a]ll property listed as security in a certain Federal Disclosure Statement executed by and delivered to the Mortgagor(s) on even date." For reasons that are not entirely clear, King eventually received a debt consolidation loan that American General alleges was not secured by real estate.

Undisputedly, Deloris Sims received a loan from American General secured by real property; however, the document American General relied on was an undated attorney preference statement.

In 1996, King and Sims brought this action on behalf of themselves and those similarly situated. In 1998, Judge T.L. Hughston, Jr. denied American General's motion for summary judgment and certified the class. The court analyzed the proposed class under Rule 23(a), SCRCP, and found all the following elements were satisfied: numerosity, commonality, typicality, adequacy of King and Sims as class representatives, and the amount in controversy exceeded one hundred dollars per class member.

Importantly, when discussing typicality, the court stated:

[American General] has asserted a 'substantial compliance' argument based upon *Davis v. NationsCredit Fin. Serv. Corp.*, [326 S.C. 83,] 484 S.E.2d 471 (1997). This argument is misplaced. *Davis* dealt with an issue of form, not one of timing. In *Davis*, the plaintiff had received the required notice at the time of application as required by [s]ection 37–10–102, but the notice was on a separate sheet rather than on the first page of the application. Timing is a critical issue of informed disclosure. The definition proposed by [King and Sims] excludes those who received the form at

preference provision of section 37–10–102. *See* Act No. 99, 1997 S.C. Acts 482.

the time of application. . . . [T]he requirement of typicality is satisfied.

Further, Judge Hughston's order stated:

This Court therefore orders the certification of the proposed class consisting of all persons who, since July 1, 1982, have taken a loan from [American General] which was secured in whole or in part by a lien on real estate in South Carolina for personal, family, or household purposes, whether recorded or not, and

a. for whom the debt secured is: i) still outstanding, or ii)(sic) payment was made on the loan within three years of the date of the filing of this action on August 1, 1996, and

b. for whom [American General] failed to ascertain the attorney or insurance preference of the borrower at the time of application in the manner required by S.C.Code Ann. § 37–10–102.

American General petitioned this Court for Writ of Mandamus and Writ of Certiorari from Judge Hughston's order. This Court denied both petitions. Subsequently, this case was designated as complex, and thereafter, it was assigned to Judge James C. Williams, Jr.

In 2001, Judge Williams decertified the class after finding "there is no such thing as a typical plaintiff in this case" because the timing of when a loan attached to property differed among the borrowers. In a later ruling, the trial court granted summary judgment in favor of American General in King's case, finding the loan King eventually received was not secured by real property.

Additionally, the trial court granted partial summary judgment in favor of Sims, noting "there can be no substantial compliance where the preferences are not ascertained until closing." Subsequently, the trial court granted American General's motion to reconsider the ruling for Sims, vacated its earlier ruling, and conducted a jury trial.

The jury found for American General. First, the jury was asked:

Did the actions of American General in this case give a clear and prominent disclosure of the information necessary to ascertain the relevant preference of Deloris Sims? In other

words, did American General substantially comply with the statutory requirements?

The jury answered "yes." Next, the jury was asked to determine when the disclosure was made. Eleven jurors found American General made the disclosure on the day of the closing, and one juror found American General made the disclosure prior to the closing. Judgment was entered for American General.

This appeal of the decertification and treatment of King's and Sims's individual cases followed.

## II.

### A.

King and Sims argue the trial court erred in decertifying the class. We agree.

It is within a trial court's discretion whether a class should be certified. *Tilley v. Pacesetter Corp.*, 333 S.C. 33, 42, 508 S.E.2d 16, 21 (1998). Additionally, "[a] court may not look to the merits when determining whether to certify a class." *Id.* at 43, 508 S.E.2d at 21.

As discussed above, at the relevant time, section 37–10–102 stated:

Whenever the primary purpose of a loan that is secured in whole or in part by a lien on real estate is for a personal, family or household purpose—

(a) *The creditor must ascertain the preference of the borrower* as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction ... *and the credit application on the first page thereof must contain information as is necessary to ascertain these preferences of the borrower.* The creditor may require that the attorney or agent so chosen be able to provide reasonable security to the creditor by way of mortgage title insurance in a company acceptable to the creditor and other insurance in a company acceptable to the creditor. If title insurance is made a condition of the loan at any point during the negotiations, it must remain a condition all the

time thereafter regardless of which attorney ultimately closes the transaction. Any legal fees other than for examination and certification of the title, the preparation of all required documents, and the closing of the transaction required or incurred by the creditor in connection with the transaction is the responsibility of the creditor regardless of which party pays for the title work, document preparation, and closing.

S.C.Code Ann. § 37–10–102(a) (1989 & Supp. 1995) (emphasis added).

This Court interpreted the applicable version of section 37–10–102 in *Davis v. NationsCredit Financial Services Corp.*, 326 S.C. 83, 484 S.E.2d 471 (1997). In *Davis,* this Court answered certified questions arising from a mortgage loan transaction where Davis received an attorney preference statement on a separate sheet of paper contemporaneously with her credit application. *Id.* at 84, 484 S.E.2d at 471. The issue in *Davis* was one of form: whether the presentation of the attorney preference disclosure on a separate paper from the application violated section 37–10–102.

In answering those questions, we construed the legislative purpose of section 37–10–102 to be "to protect borrowers." *Id.* at 86, 484 S.E.2d at 472. This Court held that a lender may deviate from section 37–10–102 by assessing the borrower's preference for legal counsel on a separate piece of paper, provided the disclosure is "clear and prominent" and made contemporaneously with the actual loan application. The Court sanctioned such a deviation on the basis of substantial compliance. *Id.* at 86, 484 S.E.2d at 472. Thus, this Court held substantial compliance may be achieved if the form of the disclosure is clear and meaningful. The *timing* of the attorney preference disclosure was not an issue in *Davis,* as the lender provided the attorney preference statement contemporaneously with the loan application.

▮ Timing is the central issue in this case. Consistent with Judge Hughston's ruling, we construe section 37–10–102(a) as requiring the attorney preference disclosure to occur contemporaneously with the credit application. Our construction of legislative intent flows from the clear language of the statute—"the credit application on the first page thereof must

contain information as is necessary to ascertain these preferences of the borrower"—and from the 1983 interpretation by the Department of Consumer Affairs." [3]

■ The Court will construe legislative intent in accord with unambiguous statutory language:

> In interpreting statutes, th[is] Court looks to the plain meaning of the statute and the intent of the Legislature. Furthermore, if possible, legislative intent should be found in the plain language of the statute itself. If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the Court has no right to impose another meaning.

*Binney v. State,* 384 S.C. 539, 683 S.E.2d 478, (2009) (internal citations and quotation marks omitted); *see also Lexington Law Firm v. S.C. Dep't of Consumer Affairs,* 382 S.C. 580, 586, 677 S.E.2d 591, 594 (2009) (noting that an agency's construction of a statute within its purview is entitled to respectful consideration and, absent compelling reasons, should not be rejected).

The timing feature of section 37–10–102 imposes a bright-line approach which is manifestly at odds with the notion of "substantial compliance." To permit a construction of section 37–10–102 as sanctioning the lender's furnishing the borrower with the attorney preference disclosure after the application was completed would undermine the legislative purpose "to protect borrowers." *Davis,* 326 S.C. at 86, 484 S.E.2d at 472; *see also McClanahan v. Richland County Council,* 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002) ("All rules of statutory

---

3. As noted, section 37–10–102 was amended on May 30, 1996. Notably, the amendment affects causes of action accruing on or after May 30, 1996. Act No. 355, 1996 S.C. Acts 2187. The amended statute requires that "[t]he creditor must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction." The amended statute allows creditors to comply by "including the preference information on or with the credit application B ... or [by] providing written notice to the borrower ... no later than three business days after the application is received or prepared." The three day post-credit application option under the 1996 amendment is not present in the prior version of the statute which is before us today.

construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute."). And the suggestion that the attorney preference disclosure may be made at closing borders on frivolity.

The trial court correctly observed the varying times in the loan process during which the attorney preference disclosure was made. A disclosure not made contemporaneously with the credit application is untimely. The typicality requirement of Rule 23, SCRCP, is found in the common feature of the lender failing to timely provide the attorney preference disclosure. The additional prerequisites to class certification are similarly present, including numerosity, commonality, and the adequacy of King and Sims as class representatives. In decertifying the class, we hold the trial court committed legal error. Accordingly, we reverse the class decertification. The class shall be deemed certified as of July 2, 1998, without interruption.

## B.

We turn to Sims's individual case, which involved a signed but undated attorney preference disclosure form. Sims argues the trial court erred in merging the principle of substantial compliance with the timing element of section 37–10–102. We agree.

■ As discussed above, the trial court impermissibly entangled the concepts of timeliness and substantial compliance. It was error to instruct the jury on substantial compliance with respect to the timing element of the attorney preference disclosure. As a matter of law, providing the attorney preference disclosure after the completion of the credit application violated section 37–10–102. This prejudicial error is clear in the inconsistent jury verdict forms. Accordingly, we reverse due to the trial court's error of law in permitting the timing element in section 37–10–102 to be satisfied by substantial compliance.

## C.

■ King argues the trial court erred in granting American General summary judgment on the basis that her loan ultimately was not secured by real property. We are not persuaded on the record before us that American General is entitled to summary judgment.

■ "Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Cafe Assoc., Ltd. v. Gerngross*, 305 S.C. 6, 9, 406 S.E.2d 162, 164 (1991); *see Koester v. Carolina Rental Ctr., Inc.*, 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994) ("In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the non-moving party.").

■ As part of the December 1995 loan application, King executed a disclosure form furnished by American General that stated: "You are giving a security interest in your Real Estate." [4] As noted, King also signed a "Security Agreement," which indicates King granted American General a mortgage in "[a]ll property listed as security" in the disclosure form. We further point out that it appears the King loan was initially intended to be secured by her real estate, and the law required the attorney preference disclosure at the time of the application. We make no finding on the matter of liability and merely hold that the record before us does not warrant summary judgment in favor of American General.

---

4. The federal disclosure form was not recorded. Gail Laney, the manager of deeds in the county where King's home is located, stated in her affidavit no mortgage is recorded for King's property in the land records office. The absence of recording, however, affects priority among creditors, not the existence of a lien. *Epps v. McCallum Realty Co.*, 139 S.C. 481, 497, 138 S.E. 297, 302 (1927) (holding as to the two parties involved in making an instrument, recording is not necessary for the instrument to be valid). American General argues that the federal disclosure form cannot, as a matter of law, create a security interest in real property. There is, however, additional evidence in the record (beyond the federal disclosure form) which also points to a security interest in King's real property.

## III.

King and Sims make additional arguments that we decline to reach due to our above holdings. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not discuss remaining issues when disposition of prior issue is dispositive).

We reverse the trial court's rulings regarding King's and Sims's individual claims and the decertification of the class. We remand the case to proceed as a class action effective as of the date of Judge Hughston's original order to certify the class filed on July 2, 1998.

**REVERSED AND REMANDED.**

TOAL, C.J., WALLER, PLEICONES and BEATTY, JJ., concur.